## MILAM v. COOPER CO., Inc. et al.
### No. 3076.

Court of Civil Appeals of Texas. Waco.

May 21, 1953.

Rehearing Denied June 11, 1953.

Witt, Terrell, Jones & Riley, Waco, for appellant.

Naman, Howell & Boswell, Waco, for appellees.

McDONALD, Chief Justice.

This case is a suit by certain minority stockholders of The Cooper Company, Inc., for themselves and on behalf of the corporation, to set aside a loan in the amount of $292,954.33 made by the directors of The Cooper Company and later confirmed by the stockholders, to J. R. Milam, Jr., and for judgment against Milam for the amount of the loan, plus interest at 4 per cent, together with foreclosure of lien of 2005 shares of The Cooper Company stock which Milam pledged to secure the loan.

Appellant, J. R. Milam, Jr., was a stockholder and a Vice-President of The Cooper Company but did not own or control a majority of the stock of the corporation. He was desirous of controlling the corporation and learned where 2005 shares of stock could be purchased for approximately $292,-000, which 2005 shares would give him control of the corporation. He endeavored to borrow the money necessary to buy this

stock from the First National Bank of Waco, the Amicable Life Insurance Company, and the Methodist Orphans Home, but was unable to do so. On 20 August 1951 he succeeded in borrowing $292,954.33 from the Kimbell Milling Company at Fort Worth for the purpose of purchasing the 2005 shares of stock and pledged the 2005 shares of stock for the payment of the indebtedness. The note representing same matured six months from date. This purchase gave Milam a 16 share majority out of a total of 7000 shares in The Cooper Company.

With control of The Cooper Company, Milam had himself elected President, and elected a board of directors, composed of himself, his wife, his mother, his attorney and one holdover member of the board. With this control he then voted to liquidate the grocery department of The Cooper Company and made arrangements to sell a large part of the grocery department stock to the Kimbell Milling Company. Thereafter the Kimbell Milling Company purchased and received delivery of a large portion of the stock of the grocery department, but when approached to pay for same in effect said that they would not do so until Milam paid his personal obligation to the Milling Company.

After having himself elected President of the corporation, J. R. Milam, Jr., and his board of directors voted to raise his salary from $400 per month to $1,000 per month; and voted to pay him a $22,000 commission in addition to his regular salary for his services in liquidating the grocery department.

On 10 December 1951, Milam issued Kimbell Milling Company a credit memorandum for $292,954.33 in payment of his personal obligation. The board of directors of The Cooper Company, as above composed, subsequently accepted Milam's note for the $292,954.33 which had been used to pay off the Kimbell Milling Company the money that Milam owed it. Milam pledged the 2005 shares as security for the loan and agreed to pay 2½ per cent interest and to repay the loan in 15 years. At the time of this loan The Cooper Company had a capital of $700,000 and a surplus fund of $400,-

000 and the rights of creditors were not and are not here involved.

It was Milam's plan that when money from the liquidation of the grocery department had been paid and collected, he, through his control of the Company, would vote a partial capital liquidation; and the Company further made an offer to re-purchase outstanding stock from any stockholder who desired to sell it to the corporation at $146 per share. Milam sold the corporation 484 shares of his stock. He gave himself credit on his note to the corporation for the amount of stock that he sold to the corporation.

Subsequent to the time suit was filed herein Milam executed a new note to the corporation for his indebtedness, said new note to mature in one year, and bearing 4% interest. The action of the board of directors in making Milam the loan was later ratified by a majority of the stockholders.

The by-laws of The Cooper Company contain no provision prohibiting a loan to officers of the corporation. There is no Texas statute forbidding the directors of a corporation loaning money to an officer.

Appellees prayed for attorney's fees but offered no evidence on same and no issue was submitted to the jury. After verdict, but before judgment, the trial court, over objection permitted Appellees to file a trial amendment withdrawing the prayer for attorney's fees.

Trial was to a jury, which, in response to the one issue submitted, found that the value of The Cooper Company stock was $100 per share. The court in its judgment found that the loan made by the directors and confirmed by the stockholders, of The Cooper Company to J. R. Milam, Jr. was not incidental to or in furtherance of the purposes for which the corporation was organized, and that it was unauthorized as a matter of law and constituted an unlawful diversion of the corporate funds of the corporation. The trial court further decreed transfer of the stock Milam had sold to The Cooper Company, back to Milam and cancelled the credit Milam had taken on his note, for this stock. The trial court rendered judgment in favor of Appellees for

the $292,954.33, plus interest at 4% and foreclosure on the 2005 shares of The Cooper Company stock.

Appellant appeals to this court on four points but which present only two basic contentions: 1) That the trial court erred in holding that The Cooper Company did not have the power to make a loan to J. R. Milam, Jr. under the facts in this case; and 2) that the trial court erred in permitting the plaintiffs to file a trial amendment withdrawing that portion of their cause with reference to attorney's fees after the jury had returned a verdict and had been discharged.

The all important question presented by this appeal is whether or not, under the *particular facts in this case,* The Cooper Company, Inc., a mercantile corporation, had the power to make a loan of some $292,000 to its President, when the corporation was solvent and when the rights of creditors were not prejudiced, and when there is no law of the state or by-law of the corporation prohibiting such a loan. The question here presented is not therefore the abstract one, *can a corporation lawfully loan money to one of its officers?* but rather is: *could the directors of The Cooper Company, Inc., under all the facts and circumstances in evidence in this case, lawfully loan its President, J. R. Milam, Jr., $292,954.33?*

The general rule of law applicable to this case is, that, unless forbidden by statute, an officer may borrow money from the corporation and give his note therefor. *Such transaction should, however, be closely scrutinized.* See 19 C.J.S., Corporations, § 771, p. 134. Let us then proceed to scrutinize and examine closely the facts and circumstances surrounding this particular loan of more than $292,000 made by the directors of the corporation to its President, J. R. Milam, Jr.

A director or other corporation officer will not be permitted to derive any personal profit or advantage by reason of his position, distinct from his coshareholders, and the law has ceased to look at the mere form of the device employed, but instead now pierces through the surface and seizes upon the evils which lie within. Porter v. Healy, 244 Pa. 427, 91 A. 428; Blum v. Fleishhacker, D.C., 21 F.Supp. 527; Id., 9 Cir., 109 F.2d 543.

An officer of a corporation is obligated by reason of his mere occupancy of the office, to act in all matters affecting the corporation and its stockholders solely with an eye to their best interest, unhampered by any pecuniary interest of his own. Western States Life Ins. Co. v. Lockwood, 166 Cal. 185, 135 P. 496, 498.

"The officers and directors of a corporate body * * *, are trustees of the stockholders, and can not, without being guilty of fraud, secure to themselves advantages not common to the latter." Bigelow on Fraud, p. 248.

It is clear that J. R. Milam, Jr.'s acts constituted a wrongful diversion of the corporation's funds—used not to benefit the corporation—but used to benefit J. R. Milam, Jr. See Farracy v. Security National Bank, Tex.Civ.App., 4 S.W.2d 331; Id., Tex.Com. App., 29 S.W.2d 1073.

Article 1349 Texas Vernon's Annotated Civil Statutes provides that no corporation shall employ its stock, means, assets, or other property, directly or indirectly, for any purpose whatever other than to accomplish the legitimate business of its creation, or those purposes permitted by law.

A director or officer of a corporation occupies the position of a fiduciary toward the corporation for the stockholders. As such he can not use the corporate funds to secure personal advantage. See Marosis v. Alamo Amusement Co., Tex.Civ.App., 60 S.W.2d 876 (Er. Granted but affirmed with no opinion by Sup.Ct.); 13 Am.Jur., Sec. 998; 19 C.J.S., Corporations § 786.

There is no escape from the proposition that Milam in using money of the corporation, took advantage of his position for his own personal benefit.

"A director or other officer may not either directly or indirectly derive any personal profit, benefit, or advantage by reason of his position that is not enjoyed in common by all the stockholders." "It is immaterial that the corporation was not damaged, or even that it was benefited, by the transaction * * * or that the officer acted * * * without intent to injure the

corporation, or that the means used to accomplish the unlawful end would, standing alone, be lawful; nor do the vermiculations by which the unfaithful officer endeavors to conceal the real nature of the transaction have any other effect than to show his guilty scienter, and thus furnish evidence against him." 19 C.J.S., Corporations, § 786.

■ Prima facie, an officer of a corporation has no authority to use its funds or securities to pay his private obligations. Fehr v. Campbell, 288 Pa. 549, 137 A. 113, 52 A.L.R. 506.

In the case at bar Milam paid his personal obligations to Kimbell Milling Company with corporate funds of The Cooper Company, Inc.

Hildebrand Texas Corporations, Vol. 3, p. 1, Sec. 681, states: "The fiduciary relation in which they (the directors) are placed as to their corporation imposes upon them the duty to use the authority given them solely for the benefit of the corporation and its stockholders. They are not permitted to appropriate the property of the corporation to their private benefit * * *." See Pocket Part, Sec. 681, Vol. 3, supra, and Paddock v. Siemoneit, 147 Tex. 571, 218 S.W.2d 428, 429, 7 A.L.R.2d 1062.

The proposition that officers of a corporation will not be permitted to deal with the corporate funds and property for their private gain is indeed so well established in the body of our law as not to admit of contradiction.

■ The character and consequences of the acts of an officer must be determined on the basis of the particular facts in each case. Paddock v. Siemoneit, 147 Tex. 571, 218 S.W.2d 428. Let us therefore further consider the nature of the facts in this particular case.

In the case at bar almost one-half of the stockholders disapproved of the action of the corporation's President and board of directors and were plaintiffs in this suit to set aside the loan. It is obvious, and the trial court so found, that the loan to Milam was not incidental to or in furtherance of the purposes for which the corporation was organized, or even to the interest of the cor-

poration, *but* to the contrary was a loan which was wholly and solely to the furtherance of Milam's personal interest, and ambition to control The Cooper Company, Inc. The loan, (if indeed it could be termed a loan by the Board of Directors, in its inception, since Milam merely gave Kimbell Milling Company a credit memorandum for the amount and later signed a note and secured approval from the board of directors for the loan to him) enabled Milam to pay off his loan to the Kimbell Milling Company —which loan from Kimbell Milling Company had in turn enabled him to buy enough stock in The Cooper Company, Inc. to control it, and thereafter elect himself President—raise his own salary from $400 to $1,000 per month; elect his wife, his mother and his attorney to the board of directors; liquidate the grocery department; pay himself a $22,000 commission in addition to his salary for his services in liquidating the grocery department; cause the corporation to offer to buy stock in the corporation from stockholders at $146. per share; sell the corporation 484 shares of his stock, thereby enabling himself to pay off a substantial portion of his note, which in turn represented money borrowed to pay off a loan which was incurred to buy stock in The Cooper Company, Inc. to give him control of The Cooper Company, Inc. in the first instance.

Regardless of how the plan was embellished with resolutions, votes and confirmations, it amounted to the taking of the funds of The Cooper Company, Inc. by Milam in the amount of $292,954.33 in order to pay for the 2005 shares of stock which enabled him to control the corporation. Was any of the above for the benefit of the corporation? If it was it was merely incidental to the benefits inuring to the principal beneficiary, J. R. Milam, Jr.

Applying the facts in the case at bar to the principles of law announced—we must conclude that the loan as made to J. R. Milam, Jr. by the board of directors of The Cooper Company, Inc. was made, not for the best interest and advantage of The Cooper Company, Inc. or its stockholders, but to the contrary, was to the personal private advantage and gain of J. R. Milam, Jr.

From a close scrutiny of all the facts and circumstances in evidence in this case, we therefore hold that the officers and directors of The Cooper Company, Inc. did not have the authority to make the loan to J. R. Milam, Jr., and that the making of the loan constituted an unlawful diversion of the funds of The Cooper Company, Inc.

As to Appellant's 2nd contention that the trial court erred in permitting Appellees to file a trial amendment and withdraw their prayer for attorney's fees in their 1st amended petition—Appellees filed a trial amendment with the permission of the trial court stating that the prayer for attorney's fees was withdrawn. The filing was after verdict but prior to final judgment. Trial amendment may in the discretion of the court be allowed after verdict and before judgment. McDonald, Texas Civil Practice, Vol. 2, p. 738. Too, Appellant did not raise this matter on motion for new trial and has therefore waived it. Moreover, Appellees' right to attorney's fees will not accrue until they succeed in their litigation. When and if attorney's fees do acrue and Appellees assert their right to same by suit or otherwise, the contentions raised by Appellant may then be presented.

All of Appellant's points are overruled and the judgment of the trial court is in all things affirmed.

TIREY, J., not participating on account of illness.