**EDWARD BANKERS & COMPANY,
Appellant,**

v.

**James R. SPRADLIN, Appellee.**

**No. 17181.**

Court of Civil Appeals of Texas,
Houston (1st Dist.).

Nov. 16, 1978.

Rehearing Denied Dec. 14, 1978.

George M. Bishop, Houston, for appellant.

Rolf W. Spradlin (no brief filed), Houston, for appellee.

EVANS, Justice.

This is a suit for the recovery of lease rentals allegedly due on vacated office space.

The lease agreement in question, executed by Houston Endowment, Inc., as lessor, and by James R. Spradlin, as lessee, was for an office suite (suite 325) in the Houston Bar Center Building. Under the terms of the lease, Spradlin agreed to pay a monthly rental of $330.00 for a five year term beginning August 1, 1970, and ending July 31, 1975.

In March 1972, the Houston Bar Center Building was acquired by new owners who contracted with the plaintiff to manage the building and to receive the rentals therefrom. Mr. Spradlin continued to occupy suite 325 and he used those offices for his law practice until September 1972, when he moved to suite 1000, a larger and more expensive space in the same building. After Spradlin moved his offices to suite 1000 he made no further rental payments on suite 325, and the plaintiff subsequently brought this action against him for the recovery of the rental payments allegedly owed for the last four months of 1972 and the first three months of 1973.

The principal controversy in the trial court was whether Spradlin had been released of his obligations under the lease on suite 325 when he moved his offices to suite 1000. The jury answered special issues in favor of the position advanced by Mr. Spradlin, and the trial court entered a take nothing judgment against the plaintiff on its claim for rent and for attorney's fees. The trial court denied Spradlin's cross-claim for recovery of damages based upon the plaintiffs alleged failure to clean carpets, provide security guards, reasonable heating and cooling, and for attorney's fees. This is a limited appeal from that portion of the trial court's judgment rendered against the plaintiff.

The jury found (Special Issue No. 3) that the plaintiff had released Spradlin from liability under the lease, and (Special Issue No. 2) that the plaintiff's building manager had apparent authority to negotiate leases and releases of leases on behalf of the plaintiff. In eight points of error the plaintiff challenges the legal and factual sufficiency of the evidence to support these findings and contends that the trial court erred in its instructions with respect the term "apparent authority".

■ The surrender of leased premises by a tenant and the acceptance of possession by the landlord ordinarily releases the tenant from further obligation to pay rentals. 51C C.J.S. Landlord & Tenant § 129, pages 410–412; *Patteson v. McGee*, 350 S.W.2d 241, 244 (Tex.Civ.App.—Eastland 1961, no writ.) An agreement of surrender and release may be express, or it may be implied from the circumstances and acts of

the parties. *Drollinger v. Holliday*, 117 S.W.2d 562, 564 (Tex.Civ.App.—Waco 1938, no writ). The question of whether there has been an acceptance by the landlord releasing the tenant from further obligations under the lease involves a determination of the intent of the parties, and this may present an issue of fact. *Patteson v. McGee*, supra.

Mr. Spradlin testified that the only person he dealt with when he moved his offices from suite 325 to 1000 was Mr. James Milligan, the plaintiff's building manager at that time. He stated that the building had changed hands several times, that he did not know who then owned the building, but that the building had a telephone number, which the tenants used to call for service, and when he called this number he was referred to Mr. Milligan. He assumed that Mr. Milligan represented the owners "since everybody leased through him, or released through him, or moved within the building through him." Mr. Milligan was the man "who you got new leases from, and when you moved and things of that nature", and he leased his new office space in suite 1000 from Mr. Milligan. When he moved his offices to suite 1000 his rental was increased from $330.00 per month to approximately $600.00 per month, and he no longer paid rent on suite 325. Mr. Milligan told him he did not have to pay any more rent on suite 325 and that he was released from the obligations. He believes he received a letter confirming the release of his obligations with respect to suite 325, but he was unable to find the letter. When he moved his offices from suite 325, he completely vacated the space and left nothing on the premises. He believed that he had signed a new lease on suite 1000, but was not sure and did not have a copy of the new lease. When he moved to suite 1000 he began paying rent on that space to the building management, and he signed a new document with them, but he did not know whether that was a sublease or a new lease. He stated that he would not have leased suite 1000 if he thought he had to continue to pay rent for suite 325 as well as suite 1000. If Mr. Milligan had not told him that he would no longer be responsible for rent on suite 325, he would not have moved.

The building manager, James Milligan, was not employed by the plaintiff at the time of trial, and he did not testify.

The plaintiff's vice-president in charge of building operations, Mr. Quinten Sieck, testified that in September 1972, Mr. Milligan had worked under his supervision. Mr. Sieck stated that he had not given Milligan authority to release Spradlin from the lease on suite 325, and that he himself would not have had this authority. He stated that such action had to be approved by the plaintiff's board of directors and that he did not know if such action had ever been approved. After Spradlin moved out of suite 325, the building management stored rolls of carpet and boxes in part of suite 325, but Mr. Sieck did not recall for whom the material had been stored.

 The jury could have concluded from the testimony that Spradlin agreed to vacate his office space in suite 325 and to move his offices to suite 1000, with a substantial increase in his monthly rent, upon the assurance of the plaintiff's building manager that he would not have any further obligation to make rental payments on suite 325. The jury might also have inferred from the testimony that the plaintiff accepted Spradlin's surrender of the office space in suite 325 and that when Spradlin vacated those premises, the plaintiff resumed possession and made use of the space of its own purposes. Thus, from the circumstances presented by the evidence the jury could have concluded that there was a mutual understanding and agreement between the parties to terminate Spradlin's lease on suite 325 and to enter into a new lease arrangement covering suite 1000. Where the circumstances and acts of the parties are equivalent to an agreement on the part of the tenant to vacate the leased premises and on the part of the landlord to resume possession, a surrender results by operation of law. *Cannon v. Freyermuth*, 4 S.W.2d 84 (Tex.Civ.App.—Dallas 1928, no writ).

The evidence is legally and factually sufficient to support the jury's finding that the plaintiff released Spradlin from liability under the lease covering suite 325. The plaintiff's points of error challenging the sufficiency of the evidence to support this finding, are, therefore, denied. In view of this determination it becomes unnecessary to consider the plaintiff's points of error regarding the question of whether the building manager had apparent authority to bind the plaintiff to an express agreement of release.

The judgment of the trial court is affirmed.