**SOUTHMARK MANAGEMENT CORPORATION, Appellant,**

v.

**Ronald VICK, Appellee.**

**No. 01–84–0841–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

May 16, 1985.

Rehearing Denied June 13, 1985.

Jeffrey Lehman, Houston, for appellant.

Larry A. Vick, Houston, for appellee.

Before EVANS, C.J., and COHEN and DUNN, JJ.

## OPINION

DUNN, Justice.

This is an appeal from a suit brought by appellee to recover a security deposit of $200 pursuant to Tex.Prop.Code, Title 8 (Vernon 1984). Appellant, Southmark Management Corporation, counterclaimed to recover rent due under the terms of a lease agreement, alleging breach of the lease agreement by appellee. The trial court ordered a directed verdict against appellant on this counterclaim and submitted special issues to the jury regarding appellant's bad faith in not returning the security deposit and the payment of reasonable attorney's fees.

Under the terms of the lease agreement, appellee agreed to the following: to pay a monthly rental of $455 for the use of apartment No. 501; that rent would be due and payable on or before the 3rd day of each month; and that the lease would be for a six-month term beginning August 1, 1982, and ending January 31, 1983. The lease also provided for automatic extension beyond its original term, on a month-to-month basis, unless either party gave written notice of termination. The lease further provided, in effect, that if appellee elected to move out without rent being paid in full for the entire lease term, renewal, or extension period, he would be liable for a $200 liquidated cost-of-reletting fee which could also be applied against the required security deposit. In addition, appellee would be liable for a $200 cost-of-reletting fee if he failed to give a 30-day written move out notice.

On January 4, 1983, the final month of the lease term, pursuant to the lease paragraph entitled "Default by Resident," appellant notified appellee in writing that he had failed to timely pay his rent, that he had to surrender the premises, that his failure to move out would result in legal action being taken against him, and that any further discussion should be with the owner's representative. There was no indication in the letter that appellant intended to allow appellee to remain in the apartment under the terms of the existing lease agreement. Following appellee's receipt of this notice to vacate, the resident manager circulated a general notice to all residents. The notice stated that there would be a decrease in rent starting February 1, 1983, and invited all residents to execute a new lease. The appellee subsequently spoke with the resident manager in her office. The record contains no notice, nor any action taken by the appellant's representative informing appellee that it was appellant's intent to continue the existing lease agreement. However, she asked him to sign a new lease and he declined. He also informed her that he would be leaving.

Southmark's records indicate that appellee, after receiving notice to vacate, paid his final month's rent on January 5, 1983, in the amount of $455 and also paid rent in the amount of $420 for February 1983. Appellee testified he moved out of the apartment on February 24, 1983. He later returned and thoroughly cleaned the apartment pursuant to an oral agreement with the manager that if he did so, his security deposit would be refunded. On March 1, 1983, he made a written request for his security deposit and provided Southmark with his forwarding address. Within 30 days, Southmark sent appellee a security deposit disposition form showing that a $200 cost-of-reletting fee had been deducted from his security deposit pursuant to the lease agreement, and that there was no balance owing.

The apartment manager who had discussed the refund with the appellee was not employed by Southmark at the time of trial and did not testify. There was no evidence rebutting appellee's version of the conversations with the manager. A subsequent manager and employee of Southmark testified for appellant at trial, and Southmark's records were introduced into evidence through her testimony. The records and testimony showed that: 1) the lease in question was signed by Southmark employees at Greenspoint Village apartments; 2) the manager of the apartments distributed notices to vacate if tenants paid their rent late, and if rent was not paid the manager would then institute a lawsuit against the tenant; 3) the manager determined what portion of the security deposit would be retained; 4) the manager announced rent decreases; and 5) new leases were executed at the manager's office.

In its first three points of error, Southmark contends that the trial court: 1) erred in allowing the hearsay conversations between appellee and the manager into evidence; 2) erred in entering judgment for the appellee because there was no admissible evidence demonstrating the validity of an oral modification of the lease; and 3) erred in allowing recovery based on appellant's bad faith failure to return the deposit because appellee's breach of the original lease precluded any recovery as a matter of law.

For appellant to prevail, the lease agreement had to have been in effect and unmodified at the time appellee vacated the premises.

A surrendering of the lease held by a tenant and an acceptance of possession by the landlord ordinarily releases the tenant from liability for rent which would thereafter accrue. The question of whether there has been an acceptance by the landlord that releases the tenant from further obligation under the lease involves a determination of the intent of the parties. This presents an issue of fact. *Edward Bankers & Co. v. Spradlin*, 575 S.W.2d 585 (Tex.Civ.App.—Houston [1st Dist.] 1978, no writ); *Fidelity Management Co. v. Herod*, 600 S.W.2d 380 (Tex.App.—Corpus Christi 1980, no writ). An agreement

of surrender and release of leased premises may be expressed or implied. *Spradlin,* 575 S.W.2d at 586.

■ In the instant case, the landlord's letter of January 4, 1983, and subsequent conduct amounted to a termination of the existing lease and the tenant's acquiescence amounted to his acceptance of the termination. *Herod,* 600 S.W.2d at 382. Appellant's demand to vacate and appellee's acquiescence, when considered with the circumstances that followed, support the implied finding that appellant intended to terminate the lease.

■ The conversations with the property manager were not hearsay, but were admissions by Southmark through its employee concerning a matter within the scope of her employment and made during that employment. Tex.R.Evid. 801(e)(2)(D). We find that the evidence is legally and factually sufficient for the jury to have inferred that appellant notified the appellee to surrender the apartment for failure to timely pay rent, and that appellee's acquiescence to the notification to vacate was an acceptance of the termination of the lease rather than an abandonment of the lease. The evidence also supports the jury's inference that there was a mutual understanding and oral agreement which allowed appellee to pay $420 to remain in the apartment for the month of February, and that appellant would return appellee's security deposit if he cleaned the apartment well enough to eliminate the need for any cleaning by appellant. *Spradlin,* 575 S.W.2d 585; *Dean v. Lacey,* 437 S.W.2d 433 (Tex. Civ.App.—Beaumont 1969, no writ).

Appellant's first three points of error are overruled.

■ In its fourth point of error, Southmark contends there was no evidence to support the jury finding that it retained the security deposit in bad faith. As outlined above, the property manager induced appellee to return to the apartment and thoroughly clean it, "so that they didn't have to go in and clean it up and have their maids work there," by promising to return his security deposit if he did so. By statute, Southmark could not retain any portion of the security deposit to cover normal wear and tear. Tex.Prop.Code Ann. sec. 92.-104(b) (Vernon 1984). Appellee could have vacated the apartment, leaving the normal amount of wear and soil, without forfeiting any portion of his security. *Orgain v. Butler,* 478 S.W.2d 610 (Tex.Civ.App.—Austin 1972, no writ). Instead, appellee agreed to clean the apartment to such an extent that Southmark actually received the benefit of his labor. If appellee had not cleaned the apartment as he testified, Southmark was in a position to rebut his testimony. This it did not do. We find that there was sufficient evidence for the jury to find that Southmark, by retaining the security deposit, acted in dishonest disregard of appellee's rights and intentionally deprived him of the refund lawfully due to him. *Wilson v. O'Connor,* 555 S.W.2d 776, 780 (Tex.Civ.App.—Dallas 1977, writ dism'd). Appellant's fourth point of error is overruled.

■ In its last two points of error, Southmark contends that the trial court erred in submitting the special issue on attorney's fees because it constituted a comment on the weight of the evidence, and that the court should have submitted a special issue regarding attorney's fees prepared by Southmark. Southmark cites no authority in support of these contentions. The special issue submitted by the court read as follows:

> What amount of money, if any, do you find from a preponderance of the evidence would be a reasonable fee for the services of Plaintiff's attorney, LARRY VICK, in this cause through the trial? Answer in dollars and cents, if any.

To be a direct comment on the weight of the evidence, the issue submitted to the jury must suggest the trial court's opinion concerning the matter about which the jury is asked. *Baker Marine Corp. v. Moseley,* 645 S.W.2d 486 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.); Tex.R.Civ.P. 277. This special issue in no way suggested that any attorney's fees should be awarded to

Vick. A similarly worded issue has been found not to constitute a comment on the weight of the evidence. *See, e.g., Walker v. Rabke,* 550 S.W.2d 168 (Tex.Civ.App.—Fort Worth 1977, no writ). Appellant's last two points of error are overruled.

The judgment of the trial court is affirmed.