Richard A. ROWE, Appellant,

v.

David E. ROWE and Lido Enterprises, Inc., Appellees.

No. 2–93–146–CV.

Court of Appeals of Texas, Fort Worth.

Oct. 31, 1994.

Rehearing Overruled Dec. 14, 1994.

Mark Frels, Short, How, Frels & Tredoux, Dallas, TX, for appellant.

David Keltner, Haynes and Boone, L.L.P., Fort Worth, TX, for appellees.

Before FARRIS, WEAVER and HICKS, JJ.

## OPINION

HICKS, Justice.

Appellant Richard Rowe appeals an adverse judgment entered in a suit that resulted from a business dispute with appellee David Rowe, his brother. Richard and David had formed Lido Enterprises, Inc., a drywall construction business. After a series of business and personal disputes, Richard sued David and Lido individually and derivatively on Lido's behalf for breach of fiduciary duty and to enforce his shareholder's rights.

David counterclaimed, alleging that Richard breached his fiduciary duty to Lido.

The case was tried to a jury, which found that both Richard and David breached fiduciary duties to Lido. The trial court disregarded the findings adverse to David and entered judgment that Lido recover $14,200 in damages, along with prejudgment interest, attorney's fees, and court costs, from Richard based on his breach of fiduciary duty.

Richard attacks the trial court's judgment in fifteen points of error, while David asserts one crosspoint. Because the trial court properly entered a judgment notwithstanding the verdict and adverse to Richard, we affirm.

Richard and David incorporated Lido in June 1984 and engaged in the drywall construction business. The business encompassed drywall construction work on new custom and tract homes and eventually expanded to apartment and condominium projects. They were both directors and officers; David was president and Richard was secretary and treasurer. Each owned half of Lido's stock. They informally divided their responsibilities, with David generally responsible for running the jobs and handling the crews and Richard generally responsible for keeping Lido's books.

During Lido's first two years of operation, it was successful, but then there was a downturn in the construction industry in the area that intensified in 1986. Also, over time, the brothers' business and personal relationship deteriorated. On June 15, 1988, Richard hand-delivered to David a written, voluntary resignation as an officer and director of Lido, leaving David as Lido's only director. Soon after that, Richard then unsuccessfully attempted to reinstate himself as an officer and director of Lido by revoking his resignation. David refused to accept Richard's attempted reinstatement and had an attorney draft a corporate resolution that reduced the number of directors from two to one.

After his resignation, Richard told David to pick up all of Lido's records because Richard was leaving the country to work as a crewman on a yacht in Antigua. David obtained and later reviewed the records. He took the records to Dan Mitchell, a book-keeper, to review them as well. Mitchell found transfers of large amounts of money between various bank accounts.

Richard had earlier established for Lido a checking account at Texas Commerce Bank and a savings account at Commerce Savings. David had been authorized to write checks on the checking account, but he had not been authorized to draw from the savings account. Richard had also set up a "loan" account at Commerce Savings. Richard transferred money out of Lido's accounts into the loan account, then he used the funds for various personal investments or to start other accounts in his name.

Richard made transfers from Lido's savings account into the loan account totaling $223,000 and made transfers back into the Lido savings account totaling $215,762. Of the $223,000, Richard personally used (1) $25,000 in September 1985 to establish a stock investment account at Paine Webber; (2) $12,089 on November 22, 1985 to buy LTV stock; (3) $13,963 in December 1985 to buy real estate in Denton County; and (4) $35,000 on December 11, 1985 to establish an account at Colonial Savings. Most of the Lido money that Richard used was repaid in 1986, and the $7,200 balance was carried as an asset of Lido in the form of a loan.

When Richard returned from his sojourn in the fall of 1988, he unsuccessfully continued his efforts to resolve Lido's affairs. On May 26, 1989, Richard filed this suit against David and Lido for David's breach of fiduciary duty to Lido and to enforce his rights as a Lido shareholder. On April 23, 1990, David and Lido counterclaimed against Richard for misusing Lido's funds to buy the real estate.

Both parties amended their claims several times before trial. Richard added additional derivative claims against David for usurpation of corporate opportunities and applied for the appointment of a rehabilitative receiver for Lido. David and Lido added additional claims against Richard for other alleged misuses of Lido money. Richard then alleged as a defense that David and Lido's claims were barred by the statute of limitations.

The jury trial took place in June 1992. The jury found that both Richard and David had breached their fiduciary duties to Lido. The jury awarded Lido $74,997.56 in damages against David and $14,200 in damages against Richard. The jury also awarded Richard $21,105 in attorney's fees and awarded Lido $13,100 in attorney's fees against Richard.

Richard filed a motion for judgment based on the jury's findings, and David and Lido filed a motion for judgment and a motion for judgment n.o.v., which was later amended, requesting the trial court to set aside the jury's findings in Richard's favor and to enter judgment against Richard on the jury's findings. The trial court ruled in David and Lido's favor, granting the amended motion for judgment n.o.v.

In his first two points of error, Richard contends that the trial court erred in disregarding certain jury findings favorable to Lido and adverse to David and in entering a judgment n.o.v. because the evidence was sufficient to support the jury findings and because the evidence conclusively established that David usurped a corporate opportunity. In his crosspoint, Richard contends that the jury's findings adverse to him are factually insufficient.

In the judgment, the trial court stated:

The Court finds that DAVID E. ROWE did not breach his fiduciary duty to LIDO ENTERPRISES, INC. in operating one or more businesses "in the line" of LIDO ENTERPRISES, INC. because the evidence conclusively established that DAVID E. ROWE did not operate one or more businesses "in the line" of LIDO ENTERPRISES, INC. as that phrase is defined in the Court's instructions to the jury. Therefore, the findings of the jury in Question No. 1(a) should be disregarded, vacated and set aside.

The Court further finds that there is no evidence of probative force to sustain the findings of the jury in Questions 1(c), 2, 3, 4, and 6 and the findings of the jury in these questions should be disregarded, vacated and set aside.

The Court finds that a directed verdict on Questions No. 1(a), 1(c), 2, 3, 4, and 6 in favor of DAVID E. ROWE and against RICHARD A. ROWE would have been proper. The Court finds that judgment notwithstanding the jury's answers to Questions No. 1(a), 1(c), 2, 3, 4, and 6 should be rendered in favor of Defendant and Counter–Plaintiff, DAVID E. ROWE, and against Plaintiff, RICHARD A. ROWE.

Specifically, Richard complains that the trial court erred by disregarding the jury's answers to Questions 1(a), 1(c), 2, 3, and 4.

■■■ A trial court may render judgment n.o.v. if a directed verdict would have been proper; additionally, a trial court may, upon motion and notice, disregard any jury finding on a question that has no support in the evidence. TEX.R.CIV.P. 301. A directed verdict is proper only under limited circumstances: (1) a specifically indicated defect in the opponent's pleading makes it insufficient to support a judgment; (2) the evidence conclusively proves the movant is entitled to judgment as a matter of law; or (3) the evidence is legally insufficient to raise an issue of fact. *Texas Employers Ins. Ass'n v. Duree*, 798 S.W.2d 406, 408 (Tex.App.—Fort Worth 1990, writ denied); *Rowland v. City of Corpus Christi*, 620 S.W.2d 930, 932–33 (Tex. Civ.App.—Corpus Christi 1981, writ ref'd n.r.e.).

■■■ A motion for judgment n.o.v. should be granted when the evidence is conclusive and one party is entitled to judgment as a matter of law. *See Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 227 (Tex.1990); *John Masek Corp. v. Davis*, 848 S.W.2d 170, 173 (Tex.App.—Houston [1st Dist.] 1992, writ denied). A judgment n.o.v. will be affirmed if there was no evidence to support an issue, or conversely, the evidence established an issue as a matter of law. *See Exxon Corp. v. Quinn*, 726 S.W.2d 17, 19 (Tex.1987); *Navarette v. Temple I.S.D.*, 706 S.W.2d 308, 309 (Tex.1986); *John Masek*, 848 S.W.2d at 173. If there is more than a scintilla of competent evidence supporting the jury's finding, it must be upheld and the judgment n.o.v. will be reversed. *Mancorp*, 802 S.W.2d at 228; *Navarette*, 706 S.W.2d at 309. In making the determination of whether there is more than

a scintilla of evidence on which the jury could have made the finding, we must view the evidence in the light most favorable to the finding, considering only the evidence and inferences supporting the finding and rejecting the evidence and inferences contrary to the finding. *Mancorp,* 802 S.W.2d at 227–28; *Navarette,* 706 S.W.2d at 309.

■■■ "No evidence" exists and a directed verdict or a judgment n.o.v. should be entered when the record discloses one of the following: (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence; or (4) the evidence establishes conclusively the opposite of a vital fact. *Juliette Fowler Homes, Inc. v. Welch Assoc., Inc.,* 793 S.W.2d 660, 666 n. 9 (Tex.1990); Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 Tex.L.Rev. 361 (1960). There is some evidence when the proof supplies a reasonable basis on which reasonable minds may reach different conclusions about the existence of the vital fact. *Orozco v. Sander,* 824 S.W.2d 555, 556 (Tex. 1992).

■■■ Richard alleged that David breached his fiduciary duty to Lido in part by operating one or more businesses in the line of Lido, thus usurping a corporate opportunity. Specifically, Richard alleged that after he left the country, David caused Lido to cease to operate while conducting a competing drywall construction business in a partnership named Ke–Ro Construction and then continuing it as a sole proprietorship named RTD Enterprises.

In answer to Question No. 1(a), the jury found that David breached his fiduciary duty to Lido by operating one or more businesses "in the line" of Lido. The jury was given the following definition:

the phrase "in the line" has a flexible meaning, which is to be applied reasonably and sensibly to the facts and circumstances of a particular case. Where a corporation is engaged in a certain business, and an opportunity is presented to it embracing an activity as to which it has fundamental knowledge, practical experience and ability to pursue, which, logically and naturally, is adaptable to its business having regard for its financial position, and is one that is consonant with its reasonable needs and aspirations for expansion, it may be properly said that the opportunity is in the line of the corporation's business.

Accordingly, Richard had the burden to introduce legally sufficient evidence on each of the following elements:

- Lido was "engaged in a certain business"; and
- Lido was presented with an opportunity "embracing an activity as to which it [had] fundamental knowledge, practical experience and ability to pursue" and that "logically and naturally, [was] adaptable to [Lido's] business having regard for its financial position"; and
- the opportunity was "one that [was] consonant with [Lido's] reasonable needs and aspirations for expansion."

This burden was not met, and the trial court correctly disregarded the jury's finding. There is no evidence that Lido was "engaged in a certain business" (specifically, the drywall construction business) at the time the alleged business opportunities arose or that the alleged business opportunities were "consonant with [Lido's] reasonable needs and aspirations for expansion." Indeed, the evidence was overwhelmingly to the contrary.

Richard primarily attacks the trial court's judgment n.o.v. by contending that David established a competing drywall construction business in 1988, which he alleges is some evidence to support the jury's finding that Richard usurped a corporate opportunity. Richard relies on deposition testimony given by David in August 1988 from another lawsuit where he said that his wife and her partner were at that time "just setting ... up" Ke–Ro Enterprises, which involved "drywall tape, bed and texture." That evidence, however, when placed in its proper context, shows that Ke–Ro was a home repair and remodeling business, while Lido had never done repair and remodeling work; its business encompassed drywall construction work

on new custom and tract homes and apartment and condominium projects. Thus, when taken out of context, there may have been some evidence David was involved in an opportunity that could have been presented to Lido, Richard still failed to present legally sufficient evidence on the other essential elements of his cause of action.

Specifically, no evidence was presented that Lido was actively operating or was submitting bids for work after June 15, 1988, the date of Richard's resignation, although its corporate existence continued. Lido's pension plan was terminated in June 1988, and each brother took his share of the proceeds for his individual benefit. Richard testified that he resigned because he could not work with David any longer, and he also told David's wife that he could never work with David again. Within eight months after Richard resigned as a director and officer, he and David were communicating through their attorneys, and then this suit was filed in May 1989. After his resignation, Richard left the country for several months, and when he returned to the United States, he lived in the Fort Worth area for two months before moving to Maryland. He held various jobs completely unrelated to Lido's business. Richard objected in writing to Lido's "operation" from June 1988 to the time of trial and acknowledged that a "deadlock" had existed for three years.

There also was no evidence that the opportunity David became involved in was consonant with Lido's "reasonable needs and aspirations for expansion." Despite his contention in his postsubmission brief that he "clearly wanted to continue the business of Lido and maintain his interest in the company," Richard's own testimony established the contrary—he wanted Lido dissolved and divided up. Specifically, Richard said that before he resigned, he "wanted a separation from the business." He told David: "You can have [Lido]. I want out. I want to divide this up and get away." When he "decided to get out" of Lido, Richard "wanted to dissolve the business." The evidence established that, from the actions of both

Richard and David, Lido had no "reasonable needs and aspirations for expansion" that were consonant with David's activities with Ke–Ro. Accordingly, the trial court properly disregarded the jury's answer to Question No. 1(a), and correspondingly it also properly disregarded the jury's answers to Question Nos. 2 and 3.[1]

██ In answer to Question No. 1(c), the jury found that David breached his fiduciary duty to Lido by the manner that he addressed the IRS's claim for a return of a 941 (withholding) refund in the amount of $23,084.24 that Lido had received in April 1988. Richard relies on deposition testimony by David to argue that some evidence was presented to support the jury finding that David had mishandled the tax refund. In his deposition, David had stated that he had not attempted to contact the IRS regarding the claim for past-due taxes.

Lido had received this refund because it had overpaid taxes in 1986. Richard deposited this money in Lido's savings account at Commerce Savings. Richard told David not to spend the refund money because the IRS might later come back for it. After Richard resigned from Lido, David withdrew Lido's money from Commerce Savings and opened a new account in Lido's name at Texas Commerce Bank in Arlington. Richard claimed that David failed to respond to repeated inquiries by the IRS regarding the tax refund, which resulted in the IRS garnishing the balance (approximately $11,000) of Lido's Texas Commerce Bank account. Richard contends that the IRS tax levy against Lido is sufficient evidence to support the jury's finding.

On April 3, 1989, Lido received a letter from the IRS claiming that Lido owed $28,859.07 in taxes for 1986, the year the refund had been issued. After Lido received this letter, Robin Rowe, David's wife, contacted Richard. Richard and Robin discussed the IRS letter, and Richard told her "under no circumstances to send that money back" to the IRS. Lido received another letter from the IRS on May 8, 1989 and a notice of levy

---

1. In Question No. 2, the jury found that David's breaches proximately caused damages to Lido, and in Question No. 3, the jury found the damages to be $74,997.56.

in February 1990 on Lido's Texas Commerce Bank account.

At trial, David, Robin and Lido's bookkeeper all testified that they went together to the IRS office in the Bedford area to meet with an IRS agent to resolve the matter. David said that he was mistaken at his deposition when he had said that he had not contacted the IRS.

We agree with the trial court that the record reveals there was no evidence to support Richard's breach of fiduciary duty claim regarding David's handling of the tax refund. The trial court properly granted judgment n.o.v. on Question No. 1(c).

Moreover, the trial court properly granted judgment n.o.v. on Question Nos. 1(c), 2, and 3 because there was no evidence that David's alleged mishandling, if any, of the tax refund proximately caused any damages to Lido. It is axiomatic that absent any damages, Richard, derivatively on Lido's behalf, had no breach of fiduciary duty cause of action against David relating to the tax refund. The jury found damages in the amount of $74,997.56, which represented to the penny David's net income for 1990 and 1991 from his home repair and remodeling business. Undoubtedly, the jury did not find any damages attributable to the alleged mishandling of the tax refund, and the record shows no evidence of such damages. Richard does not point to, and we cannot see, any harm occurring to Lido by the IRS's levy on Lido's bank account while at the same time both Richard and David did not and do not challenge the impropriety of the levy or that Lido owed the money to the IRS.

We overrule Richard's first two points of error. Because of this disposition, we need not address David's crosspoint and Richard's contention that David failed to preserve that crosspoint. Furthermore, we need not address Richard's tenth and eleventh points of error, both of which complain of the trial court's disregarding the jury's award of attorney's fees to Richard. Attorney's fees are only recoverable by a *successful* plaintiff in a shareholder's derivative suit. *See Bayoud v. Bayoud,* 797 S.W.2d 304, 315 (Tex.App.— Dallas 1990, writ denied).

In points 3, 4, 5, and 6, respectively, Richard contends that the trial court erred in submitting Question Nos. 9, 10 and 11 because they allowed the jury to award an impermissible double recovery, that the trial court erred in submitting Question Nos. 9 and 11 to the jury because they allowed the jury to award an improper measure of damages, and that the trial court erred in submitting Question Nos. 9 and 17 because they contained impermissible comments on the weight of the evidence.

In Question No. 9, the jury found that Richard breached his fiduciary duty to Lido by the following acts:

- Purchasing the Denton County real estate for his own personal use and benefit;
- Retaining the $7,849.83 proceeds from the Paine Webber investment for his own personal use and benefit;
- Failing to repay $7,238 to Lido; and
- Retaining the $3,163.17 accrued interest from the Colonial Free Account for his own personal use and benefit.

The jury found in response to Question Nos. 10 and 11 that Richard's breach proximately caused damages to Lido in the amount of $14,200.

In his third point of error, Richard contends that the trial court erred because Question Nos. 9, 10, and 11 allowed the jury to award an impermissible double recovery. David argues that Richard waived this argument because he failed to make this objection to the trial court. Richard does not contest this waiver allegation. Rule 274 requires a party objecting to the jury charge to "point out distinctly the objectionable matter and the grounds of the objection," or any complaint is waived. TEX.R.CIV.P. 274. Richard did not raise his "double recovery" objection until he filed a postverdict motion to disregard jury findings, which is not a proper method to preserve error on jury question submission. By not properly objecting to the submission of Question Nos. 9, 10, and 11, Richard waived any complaint that these questions allowed an impermissible double recovery. TEX.R.APP.P. 52(a); *Wilgus v. Bond,* 730 S.W.2d 670, 672 (Tex.1987); *Ter-*

*minix Int'l, Inc. v. Lucci,* 670 S.W.2d 657, 661 (Tex.App.—San Antonio 1984, writ ref'd n.r.e.). Richard's third point of error is overruled.

■ In his fourth point of error, Richard contends that the trial court erred in submitting the wrong theory of recovery and an improper measure of damages in Question Nos. 9 and 11 because Lido's cause of action, if any, was for usurpation of corporate opportunities, and, citing *City of Abilene v. American Surety Co.,* 73 S.W.2d 616 (Tex.Civ. App.—Eastland 1934, no writ), a conversion case, the correct measure of damages is that for conversion or wrongful detention of money—the amount of money detained or converted, plus interest. Question No. 11 asked the jury:

> What sum of money, if any, if paid now in cash, would fairly and adequately compensate Lido Enterprises, Inc. for its damages, if any, that resulted from the breach of fiduciary duty by Richard A. Rowe?

Lido's cause of action was pleaded and tried as a breach of fiduciary duty claim. Question No. 11 was proper under Texas law on Lido's breach of fiduciary duty claim. *See Meyers v. Moody,* 693 F.2d 1196, 1215 (5th Cir.1982); *Milam v. Cooper Co.,* 258 S.W.2d 953, 956–57 (Tex.Civ.App.—Waco 1953, writ ref'd n.r.e.).

■ Richard also complains that these questions allowed the jury to award additional damages (in the form of profits on the investments Richard made with Lido's money). He waived this complaint, however, by not requesting a limiting instruction. TEX. R.CIV.P. 274 & 278; *see Jim Howe Homes, Inc. v. Rogers,* 818 S.W.2d 901, 903 (Tex. App.—Austin 1991, no writ); *Miller v. Kendall,* 804 S.W.2d 933, 942 (Tex.App.—Houston [1st Dist.] 1990, no writ). Richard's fourth point of error is overruled.

In his fifth point, Richard complains that the trial court's submission of Question No. 9 contained impermissible comments on the weight of the evidence. Question No. 9 reads:

> Did Richard A. Rowe breach his fiduciary duty to Lido Enterprises, Inc. in any of the following respects:

Answer "Yes" or "No" to each of the following:

> a.) Purchasing the Denton County real estate for his own personal use and benefit.

> . . . . .

> b.) Retaining the $7,849.83 proceeds from the Paine Webber investment for his own personal use and benefit.

> . . . . .

> c.) Failing to repay $7,238.00 to Lido Enterprises, Inc.

> . . . . .

> d.) Retaining the $3,163.17 accrued interest from the Colonial Free Account for his own personal use and benefit.

Richard's fifth point of error contends that Question Nos. 9(a), (b), (c), and (d) all contain impermissible comments on the weight of the evidence, but his brief only discusses Question No. 9(c). By failing to brief the other three subparts, he has waived any error. *See* TEX.R.APP.P. 74(f).

■ Richard argues that Question No. 9(c) is a comment on the weight of the evidence because he contended at trial that, although he at one point did in fact owe Lido $7,238, he had reduced the balance he owed Lido to less than $2,000. The standard of review in determining whether a jury question improperly comments on the weight of the evidence is whether the trial court abused its discretion. *See Texas Dept. of Human Servs. v. E.B.,* 802 S.W.2d 647, 649 (Tex.1990).

■ Rule 277 mandates that the court's charge shall not "comment directly on the weight of the evidence...." TEX. R.CIV.P. 277. However, the rule is qualified by then stating that "the court's charge shall not be objectionable on the ground that it incidentally constitutes a comment on the weight of the evidence...." *Id.* To be a direct comment on the weight of the evidence, the question must suggest to the jury the trial court's opinion on the matter asked to the jury. *Southmark Mgmt. Corp. v. Vick,* 692 S.W.2d 157, 160 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.). In

determining whether a question contains an impermissible comment on the weight of the evidence, we must consider the court's charge in its entirety. *See Briseno v. Martin,* 561 S.W.2d 794, 796 (Tex.1977).

First, Richard did not dispute that at one time he did owe $7,238 to Lido. Thus, the question was accurate in that respect. Next, the use of the word "did" and the phrase "in any of the following respects" minimized, if not eliminated, the danger of improper suggestion or implication of damages. The use of these words, along with the wording of Question No. 11 ("[w]hat sum of money, if any, ... would fairly and adequately compensate Lido Enterprises, Inc. for its damages, if any"; "answer in dollars and cents, if any"), neutralized the question and negated any impermissible effect the question may have had on the jury. The trial court did not abuse its discretion in submitting Question No. 9(c).

Furthermore, to warrant reversal, a comment on the weight of the evidence must be one that was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment. TEX.R.APP.P. 81(b)(1); *Island Recreational Dev. Corp. v. Republic of Tex. Sav. Ass'n,* 710 S.W.2d 551, 555 (Tex.1986) (op. on reh'g); *Redwine v. AAA Life Ins. Co.,* 852 S.W.2d 10, 16–17 (Tex.App.—Dallas 1993, no writ). In the context of the entire case and the jury charge as a whole, we cannot say that Question No. 9(c) constituted harmful error. Point of error five is overruled.

Richard complains in his sixth point of error that Question No. 17 also contained an impermissible comment on the weight of the evidence. Any error, however, was waived by his failure to preserve it by objecting to the court's charge on that basis. TEX. R.CIV.P. 274. Point of error six is overruled.

After the trial, Richard filed a motion to compel Lido to hold an annual shareholders' meeting for the purpose, among others, of electing a new board of directors for Lido. Richard also filed a motion for appointment of a rehabilitative receiver for Lido. The trial court denied both of these motions.

In points of error 14 and 15, Richard contends that the trial court erred in denying both of these motions. Our standard of review is whether the trial court abused its discretion in refusing to appoint a receiver and in refusing to order an annual shareholders' meeting. *Balias v. Balias, Inc.,* 748 S.W.2d 253, 256 (Tex.App.—Houston [14th Dist.] 1988, writ denied) (op. on reh'g); TEX. BUS.CORP.ACT ANN. art. 2.24(B) (Vernon 1980) ("any court ... *may,* on the application of any shareholder, summarily order a meeting") (emphasis added).

Richard sought the appointment of a receiver under article 7.05(A) of the Business Corporation Act, which provides for the appointment of a receiver "to conserve the assets and business of the corporation." TEX. BUS.CORP.ACT ANN. art. 7.05(A) (Vernon 1980). Under article 7.05(A), a party seeking a rehabilitative receiver must convince the trial court that "all other remedies available either at law or in equity" are inadequate. *Balias,* 748 S.W.2d at 257.

*Balias,* a remarkably similar case, is instructive.[2] It involved two brothers who formed a corporation and informally had a "fifty-fifty" arrangement for ownership, management, and profit-sharing but did not execute a formal shareholder agreement. *Id.* at 256. One brother accused the other of "illegal, oppressive and fraudulent acts" and sought appointment of a rehabilitative receiver under article 7.05(A). *Id.* The court of appeals held that the trial court properly refused to appoint a receiver and properly "required an emergency on which to base the relief ... sought." *Id.* at 257. The court emphasized that the appellant "failed to show proof of an enforceable provision governing his and his brother's business arrangements," but more importantly failed to demonstrate that he had exhausted all other remedies. *Id.*

That same reasoning precluded the appellant's claim that he met the requirements of

---

**2.** Although *Balias* involved a close corporation, which Lido is not, the court noted that "the same standards govern appointment of a rehabilitative receiver for both ordinary and closely-held corporations." *Id.* at 257.

article 7.05(A) "by showing that the corporation had failed to hold at least two consecutive annual meetings and that he and his brother were hopelessly deadlocked." *Id.* Because of the lack of a shareholder agreement or a provision in the articles of incorporation, the appellant never satisfactorily demonstrated that he and his brother's informal business arrangement either required an annual meeting or specified the type of vote required by corporate action. *Id.*

It is undisputed that Lido had no business, nor had it been actively engaged in business since June 1988. Lido had no monetary assets, and its remaining equipment had been stored, at Richard's request, at David's home. In these circumstances, the trial court did not abuse its discretion in refusing to appoint a receiver "to conserve the assets and business" of Lido. Richard's fifteenth point of error is overruled.

■ Despite Richard's allegation, the trial court was not *required* to order a shareholders' meeting. Article 2.24(B) states that a court "may" order such a meeting. TEX. BUS.CORP.ACT ANN. art. 2.24(B) (Vernon 1980). As in *Balias,* Lido has no shareholder agreement or articles of incorporation provision requiring a shareholders' meeting. Furthermore, David was Lido's sole director, and the trial court had entered a judgment that Richard, not David, owed Lido money. We find that the trial court did not abuse its discretion by refusing to order a meeting and overrule Richard's fourteenth point of error.

The jury answered Question No. 17 as follows:

When did David E. Rowe discover or by the exercise of reasonable diligence should have discovered the following acts by Richard A. Rowe:

|  |  | Date |
|---|---|---|
| (A) | The purchase of the real estate in Denton County, Texas | July 31, 1986 |
| (B) | The retention of $7,849.83 from the proceeds of the Paine Webber Investment | July 31, 1987 |
| (C) | The failure by Richard A. Rowe to repay $7,238.00 to Lido Enterprises, Inc. | July 31, 1988 |
| (D) | The retention of $3,163.17 accrued interest from the Colonial Free account | July 31, 1987 |

---

In points of error 7, 8 and 9, Richard argues that the causes of action the jury found against him are barred by limitations and that the trial court incorrectly applied the "discovery rule" in submitting Question 17 and in denying Richard's motion to disregard the jury's answer to Question 17.

■ The four-year limitations provision in section 16.051 of the Texas Civil Practice and Remedies Code applies to the breach of fiduciary duty claims against Richard. *See Perez v. Gulley,* 829 S.W.2d 388, 390 (Tex. App.—Corpus Christi 1992, writ denied); *Spangler v. Jones,* 797 S.W.2d 125, 132 (Tex. App.—Dallas 1990, writ denied). Richard does not dispute that the four-year statute of limitations applies.

Additionally, a tolling provision applies to the limitations challenge raised by Richard. "The absence from this state of a person against whom a cause of action may be maintained suspends the running of the applicable statute of limitations for the period of the person's absence." TEX.CIV.PRAC. & REM. CODE § 16.063 (Vernon 1986).

In response to Question Nos. 18 and 19, the jury found that from June 15, 1988 until the time of trial, Richard was absent from the State of Texas for a period of eight months. Thus, the claims submitted to the jury in Question No. 9 are timely if they were filed within four years and eight months from the date the causes of action accrued.

In his seventh and ninth points of error, Richard contends respectively that the breach of fiduciary duty claims against him are barred as a matter of law by the statute of limitations and that the trial court erred in refusing to disregard the jury's answer to Question No. 17 because the evidence conclusively established that David reasonably could have discovered Richard's transfers at or near the date when the transfers occurred. Richard contends in his eighth point

of error that the trial court erred in the way it submitted Question No. 17 because the key date in determining when the causes of action accrued is the date his alleged wrongful transfers occurred.

Fraud prevents the running of the statute of limitations until it is discovered, or by the exercise of reasonable diligence it should have been discovered. *See Willis v. Maverick,* 760 S.W.2d 642, 646 (Tex.1988); *Richard Gill Co. v. Jackson's Landing Owner's Ass'n,* 758 S.W.2d 921, 924 (Tex.App.— Corpus Christi 1988, writ denied); *Andress v. Condos,* 672 S.W.2d 627, 630 (Tex.App.— Fort Worth 1984, writ ref'd n.r.e). When, as in this case, there is a fiduciary relationship between the parties, diligence on the part of the defrauded party does not require as prompt or as searching an inquiry into the conduct of the other as when the parties are strangers or are dealing at arm's length. *Richard Gill Co.,* 758 S.W.2d at 924; *Andress,* 672 S.W.2d at 630.

Richard's argument is that the limitations issue turns on the date David knew or should have known of Richard's transfer of the funds from Lido's account, not on the date David discovered or should have discovered what Richard did with the money. He argues that "the documents reflecting Richard's transfer of funds from Lido's account were available for David Rowe's inspection, but he simply elected not to do so."

It is true that Richard kept Lido's books and records at the duplex the brothers shared in Arlington. However, Richard moved out of the duplex in December 1985, and he took these records with him. As Richard admits, the acts found by the jury in response to Question Nos. 9(a), (b) and (d) occurred in September or December 1985. Presumably, these transfers would not have been recorded until they occurred. Thus, even if David had examined the records during the time the records were kept at the duplex, he could not have discovered transfers that had not yet occurred. The evidence at trial showed that David had no knowledge of these transfers when they were made.

Moreover, the parties in this case were both brothers and fiduciaries. As treasurer,

Richard had the authority to control Lido's money. His transfer of funds from one corporate account to another was not wrongful per se; only when he used the funds for his personal benefit did the injury result and the cause of action accrue. The statute of limitations on that cause of action did not begin to run until David discovered or should have discovered Richard's wrongful acts. The jury properly made findings on this basis in response to Question No. 17, and Richard's eighth and ninth points of error are overruled.

The jury found that David discovered or should have discovered by July 31, 1986 Richard's purchase of real estate in Denton County. Thus, the statute of limitations on this claim ran on March 31, 1991 (four years and eight months after July 31, 1986). The claim regarding Richard's purchase of the Denton County real estate was filed as Defendant's Counterclaim on April 23, 1990, long before the limitations period expired.

The jury found that David discovered or should have discovered by July 31, 1987 Richard's retention of the proceeds from the Paine Webber investment. The statute of limitations on this claim ran on March 31, 1992. However, this claim was filed as part of Defendant's First Amended Counterclaim on October 15, 1990. As a result, the claim regarding Richard's retention of $7,849.00 from his investment was timely filed.

The jury found that David discovered or should have discovered by July 31, 1988 Richard's failure to repay $7,238.00 to Lido. Therefore, the limitations period expired March 31, 1993. This claim is timely because it was included in Defendant's Second Amended Counterclaim, filed on September 28, 1991.

Based on the jury's finding in response to Question No. 17(D), the statute of limitations ran on the $3,163.17 Colonial Free Account claim on March 31, 1992. This claim was included in Defendant's Third Amended Counterclaim, filed on June 19, 1992, so it was untimely and we must determine if reversible error occurred. Reversible error occurs when "the error complained of amounted to such a denial of the rights of the

appellant as was reasonably calculated to cause and probably did cause rendition of an improper judgment...." TEX.R.APP.P. 81(b)(1). Richard bears the burden of showing reversible error.

In response to Question No. 11, which asked for a single damage sum resulting from Richard's breaches, the jury awarded Lido $14,200 against Richard; the jury did not award the total amount of damages requested by Lido, approximately $32,000. Richard did not object at trial to the submission of a single damage question with respect to the four acts found by the jury in Question No. 9 to be breaches of fiduciary duty by Richard.[3] Thus, the damages awarded by the jury ($14,200) could represent damages arising from Richard's breaches of fiduciary duty involving the Denton County real estate ($13,963), the Paine Webber investment proceeds of $7,849.83, and the $7,238 loan. Richard does not challenge the sufficiency of the evidence on these three acts. Because the evidence is sufficient to support the jury's $14,200 award, and because Richard cannot complain on appeal of the submission of Question No. 11, reversible error did not occur with respect to the $3,163.17 Colonial Free Account claim. We overrule Richard's seventh point of error.

Finally, in points of error 12 and 13, Richard contends that the trial court erred in awarding Lido prejudgment interest. The trial court awarded Lido $11,334.80 in prejudgment interest (10% per annum compounded annually) on the principal amount of the judgment ($14,200) from January 1, 1987 to March 26, 1993, the date the judgment was signed.

On appeal, the only arguments Richard presents in support of his claim that the award of prejudgment interest was improper are the same arguments he made in support of points of error 3 and 4—specifically, that "prejudgment interest was accrued on an award of damages which included an imper-

missible double recovery and an improper measure of damages." We overruled points of error 3 and 4. Likewise, points of error 12 and 13—which presuppose the validity of points of error 3 and 4—are also overruled.

The judgment is affirmed.

---

**3.** Having failed to request a jury question that segregated the damages or to object to the single damage question that was submitted, Richard has waived any complaints about the form of Question No. 11. Tex.R. Civ.P. 274; *Birchfield v. Texarkana Memorial Hosp.*, 747 S.W.2d 361, 368 (Tex.1987); *Wilgus v. Bond*, 730 S.W.2d 670, 672

(Tex.1987); *Matthews v. Candlewood Builders, Inc.*, 685 S.W.2d 649, 650 (Tex.1985); *Hernandez v. American Appliance Mfg. Corp.*, 827 S.W.2d 383, 387–88 (Tex.App.—Corpus Christi 1992, writ denied); *Pioneer Fin. & Thrift Corp. v. Adams*, 426 S.W.2d 317, 320 (Tex.Civ.App.—Eastland 1968, writ ref'd n.r.e.).