**COVINGTON KNOX, INC., Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 1983.**

Court of Civil Appeals of Texas, Houston (14th Dist.).

Jan. 24, 1979.

5922, 5923, 5924; *Texas Transaction Guide— Legal Forms by Kendrick*, §§ 42.20(2), 42.21(2), 42.30(2), 42.31(2).

Debora D. Ratliff, Robin C. Gibbs, Wood, Campbell, Moody & Gibbs, Houston, for appellant.

John L. Hill, Atty. Gen., David M. Kendall, First Asst. Atty. Gen., Thomas M. Pollan, Sarah Shirley, Asst. Attys. Gen., Austin, for appellee.

CIRE, Justice.

This is an appeal from an order imposing a temporary receivership upon appellant Covington Knox, Inc. [CKI] pursuant to Tex.Rev.Civ.Stat.Ann. article 581–25–1 (Texas Securities Act). We affirm.

CKI is a Texas corporation and registered broker-dealer in government securities located in Houston, Texas. The State of Texas, at the request of the Securities Commissioner of Texas, instituted this action in May of 1978, seeking an ex parte appointment of a temporary receiver to take control of the assets of CKI. The State alleged that appellant had engaged in fraud in the purchase of securities from and the sale of securities to the University of Houston. The State further contended that CKI engaged in the sale of securities in the State of Texas without having been licensed as a securities dealer, and filed false and misleading information in connection with its

application for such license. The State urged that the immediate appointment of a receiver for CKI was necessary in order to conserve the assets of the company for the benefit of actual and potential claimants. Based upon the State's petition the trial court appointed a temporary receiver to take control of the business and assets of CKI.

CKI filed a motion to dissolve the receivership, exercising its statutory right to request a hearing upon the motion. Tex.Rev. Civ.Stat.Ann. article 581–25–1C. At the close of the hearing the trial court overruled the motion to dissolve. CKI then brought this appeal.

In its first point of error, appellant asserts that imposition of the receivership without notice and opportunity to be heard deprived appellant of its property without due process of law.

■ It is unnecessary for us to consider this question. The law is that when a defendant appears and requests dissolution of an ex parte order imposing a receivership, he waives any error in the appointment of the receiver without notice. *Whitaker Oil Co. v. Ward*, 396 S.W.2d 158 (Tex.Civ.App. —Tyler 1965, motion to certify overruled, 398 S.W.2d 155 (Tex.1965). *Salas v. Gonzalez*, 181 S.W.2d 821 (Tex.Civ.App.—San Antonio 1944, no writ). When an appeal is perfected from an order overruling a motion to vacate the receivership, the question becomes simply one of the sufficiency of the petition to support the appointment of the receivership. *Salas v. Gonzalez, supra* at 822.

■ Appellant argues that the hearing does not, consistently with due process, eliminate procedural errors incident to an ex parte appointment for the reason that at the hearing CKI had the burden of showing that the order should be vacated, whereas the State would have had the burden of justifying the order in a hearing prior to appointment. This is not the law. In a hearing pursuant to article 581–25–1C the State retains the burden of producing sufficient evidence to justify the continuation of a receivership. At no time is the movant in a motion to vacate under an obligation to disprove the State's case.

In its second point of error appellant urges that there was no evidence or insufficient evidence to establish the propriety and necessity of a receivership for the assets of CKI.

■ The appointment of a receiver is within the sound discretion of the trial court, and his order will not be overturned absent a clear abuse of discretion. *Washington American Life Insurance Co. v. State*, 545 S.W.2d 291 (Tex.Civ.App.—Austin 1977, no writ).

Article 581–25–1A authorizes the appointment of a receiver whenever it appears to the Securities Commissioner that:

(1) any person or company, a substantial portion of whose business consists of acting as a dealer, . . . shall have engaged in any act, transaction, practice, or course of business declared by Section 32 of this Act to be a fraudulent practice;

(2) such person or company shall have acted as a dealer in connection with such fraudulent practice; and

(3) the appointment of a receiver for such person or company, or the assets of such person or company, is necessary in order to conserve and protect the assets of such person or company for the benefit of customers, security holders, and other actual and potential claimants of such person or company . . . . .

Section 32 provides, inter alia,

. . . that any such person or company . . . shall have engaged in or is about to engage in any practice or transaction or course of business relating to the purchase or sale of securities which is in violation of law or which is fraudulent or which has operated or which would operate as a fraud upon the purchaser, any one or all of which . . . schemes, . . . practices, transactions and courses of business are . . hereafter referred to as fraudulent practices; . . .

Section 4F provides:

The terms "fraud" or "fraudulent practice" shall include any misrepresentations, in any manner, of a relevant fact; any promise or representation or prediction as to the future not made honestly and in good faith, or an intentional failure to disclose a material fact; the gaining, directly or indirectly, through the sale of any security, of an underwriting or promotion fee or profit, selling or managing commission or profit, so gross or exorbitant as to be unconscionable; any scheme, device or other artifice to obtain such profit, fee or commission; provided, that nothing herein shall limit or diminish the full meaning of the terms "fraud," "fraudulent," and "fraudulent practice" as applied or accepted in courts of law or equity.

■ While the evidence could have been more satisfactorily developed, this was not a trial on the merits, but only a preliminary procedure, and it was not necessary for the State to prove that it will ultimately prevail in this lawsuit.

■ The record discloses some evidence that CKI sold government securities to the University of Houston for a higher price than normal and sold securities on behalf of the University for a price lower than normal. During the time period in question the University of Houston was for all practical purposes CKI's only customer, and nearly all of CKI's gross profit was derived from the University of Houston account. There is evidence that CKI made excessive profits while acting, not as a trader, but as an agent in a non-risk trade in a normally very competitive market.

In addition, the evidence demonstrates a special relationship between the principal investors of CKI and Samuel Harwell, financial analyst in charge of short term investments for the University of Houston. Roger Knox, a founder of CKI, participated in various business ventures with Harwell beginning in the early 1970's. Knox was later associated with several different securities investment firms, and procured the University of Houston account for each one. He earned substantial commissions as a result of University of Houston transactions.

One of the original three investors in CKI was Patrick Sullivan, a California securities dealer. The evidence showed that Sullivan was a half-brother of Samuel Harwell, and that Roger Knox paid Sullivan's initial capital investment of $33,000.00 in the corporation. Sullivan was also paid substantial amounts by the firm for alleged consulting services.

The University of Houston withdrew its account from CKI in November of 1977. Shortly after this both the Texas Securities Commission and the Securities and Exchange Commission undertook investigations involving CKI. There was evidence that CKI has not acted profitably since losing the University account, and that immediately upon appointment of the receiver CKI lost its New York clearing house facilities. The evidence showed that CKI's total assets amount to approximately $300,000.00, and that a substantial salary was still being paid to Covington and an $18,000.00 automobile was purchased for corporate use shortly before the receivership was imposed. Further, there was evidence that a formal claim and demand for more than $400,-000.00 has been filed against CKI by the University of Houston. From this the judge could conclude that a receivership was necessary to conserve and protect the remaining assets of CKI.

Accordingly, based on the record, we cannot say that the trial judge abused his discretion in appointing or continuing the receivership.

■ This court is aware that a receivership is a drastic remedy, to be used sparingly in the context of private litigation. The State, however, has a legitimate public interest and police power in supervising the securities field. In order to protect the investing public, securities dealers are subject to strict licensing and regulating, and are put on notice that they are operating under a law which specifically provides for receivership. In another context one court has said, "In view of the nature of the subject matter, the grant of such powers

[is] imperative, to protect investors against fraud or deception made possible by constantly changing conditions." *R. A. Holman & Co. v. SEC*, 112 U.S.App.D.C. 43, 48, 299 F.2d 127, 132 (1962). *See also Halsey, Stuart & Co. v. Public Service Commission of Wisconsin*, 212 Wis. 184, 248 N.W. 458 (1933).

The order of the trial court refusing to dissolve the temporary receivership is affirmed.