Opinion issued August 14, 2008









Opinion issued
August 14, 2008

 

 

 

 

 

 

 

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 

NO. 01-07-00970-CV




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NANCY BENEFIELD, NANCY S. McNULTY, NAOMI MORALES,
ROBERT SETON, RUTHIE PARKER, SUSAN BERKLEY, GLORIA REEVES, SHIRLEY BUELOW, and
ANGELA BREEDLOVE, Appellants

 

V.

 

THE STATE OF TEXAS ON RELATION OF THE ALVIN COMMUNITY
HEALTH ENDEAVOR, INC. and BRAZORIA COUNTY, TEXAS, Appellees

 

 



On Appeal from the 239th District Court

Brazoria County, Texas

Trial Court Cause No. 44874

 








 



O P I N I O N

After a conflict developed among the
board members of a private, nonprofit community healthcare clinic, Brazoria
County, on behalf of the State of Texas, brought a quo warranto proceeding, in
which it sought a temporary restraining order and a temporary injunction
against the chief executive and certain board members of the nonprofit, and the
appointment of a receiver to run the clinic.  The trial court granted the
temporary restraining order and, in a subsequent hearing, ordered a temporary
injunction against the board members from taking further action on behalf of
the nonprofit.  In addition, the court appointed a receiver to oversee all of
its assets and business affairs, relying on Article 1396-7.05(A) of the Revised
Civil Statutes.  See Tex. Rev.
Civ. Stat. Ann. art. 1396-7.05(A) (Vernon 2003).  The board members appeal
the temporary injunction and the order appointing a receiver, contending that
the trial court (1) erred in determining that Brazoria County was authorized to
bring this quo warranto action against a nonprofit, (2) abused its discretion
in ordering a temporary injunction and appointing a receiver, and (3) abused
its discretion in admitting documents that were not properly authenticated.  We
conclude that Brazoria County has failed to show irreparable harm, or any
grounds upon which it may impose a receiver to run the nonprofit.  We therefore
reverse the trial court’s orders.   




Background

          The Alvin Community Health
Endeavor (“ACHE”), a nonprofit corporation founded in 1970, provides primary
and supplemental healthcare services to community residents who are medically
indigent or have limited healthcare provider options.  Since its inception,
ACHE has operated through various sources of funding, including private donations
and donations from charitable organizations.  In September 2005, ACHE began to
receive federal funding as a Federally Qualified Health Center (“FQHC”) to cope
with additional medical care needs in Brazoria County in the wake of hurricanes
Katrina and Rita.  Brazoria County owns the property upon which ACHE’s facility
is located and leases the land to ACHE pursuant to an agreement that ACHE
provide free and low-cost healthcare benefits to Brazoria County residents.  The
lease agreement recognizes that ACHE had attained FQHC status.    

In May 2007, the Health Resources and
Services Administration (“HRSA”) of the United States Department of Health and
Human Services, the federal agency overseeing FQHC funding, conducted an
on-site diagnostic review of ACHE after it received complaints about ACHE’s
then-current chief executive officer, Nancy Benefield.  Benefield had served as
the chief executive officer since 1994.  Based on its review, HRSA concluded
that ACHE had failed to comply with various requirements for federal funding,
and expressed “significant concerns regarding ACHE’s clinical, fiscal and
administrative operations as well as its governance.”  HRSA expressed its
findings in a July 19 letter to Nancy McNulty, an ACHE board member.  In the
letter, HRSA recommended follow-up actions, and stated that if ACHE did not
correct the deficiencies HRSA found, as well as comply with various
requirements, it would deny ACHE’s grant application, resulting in the loss of
its federal funding.  The letter requested a “Board-approved Corrective Action
Plan, with time-framed objectives responsive to the concerns noted,” by
September 1.   

Following the letter, in a series of
events that spanned three days in late July, some members of ACHE’s board of
directors met and voted to terminate Benefield as CEO of ACHE. Then, board
member Jerry Smith and others changed the locks at ACHE’s clinic facility,
issued a criminal trespass citation against Benefield, cancelled ACHE’s
insurance contracts, pulled the internet cabling out of the walls of ACHE’s
office, cancelled ACHE’s housekeeping contract, and terminated employees of
ACHE, all without any formal approval of the board of directors.  Finally,
certain other members of the board met again in an emergency meeting and voted
to restore Benefield as CEO of ACHE.

In response to HRSA’s warnings, ACHE
hired a healthcare management company, which proposed a Clinic Management and
Medical Staffing Agreement to ACHE to resolve the issues that concerned HRSA. 
Before the September deadline, Benefield sent a corrective action plan to HRSA,
describing ACHE’s accomplishments and continuing efforts to comply with the
federal funding requirements.  The healthcare management company also sent a
letter to ACHE’s board of directors that outlined the progress made and planned
future actions that would resolve the problems that HRSA identified in its
summary of findings.  

Fearful that ACHE stood to lose its
federal funding, Brazoria County sued.  In October 2007, the trial court
granted Brazoria County leave to file “an information in the nature of a quo
warranto.”  The county also applied for a temporary restraining order, a
temporary injunction, and the appointment of a receiver over ACHE.  In the quo warranto
action against Benefield and eight other directors, the county alleges illegal
corporate conduct, human resource code violations, and breach of ACHE’s lease. 


The trial court granted the county’s
request for a temporary restraining order.  Thereafter, the trial court heard
the applications for the temporary injunction and appointment of a receiver. 
The parties presented testimony from ex-board member Gary Goff, board members
Nancy McNulty and Nancy Benefield, and Lynda Bible, who manages similar
healthcare facilities in neighboring counties.  At Brazoria County’s request, the trial court also admitted several pieces of correspondence from HRSA.  At
the conclusion of the hearing, the trial court enjoined ACHE’s directors from
taking any action whatsoever on behalf of ACHE, except as directed by the
receiver, and barred access to all funds, accounts, and real, personal, or
mixed property.  In addition, it appointed Bible as a receiver for ACHE, and
authorized her to conduct all of ACHE’s affairs.  Benefield and the other board
members bring an interlocutory appeal, seeking reversal of the temporary
injunction and the appointment of the receiver.  See Tex.
Civ. Prac. & Rem. Code Ann. § 51.014(a)(1), (4) (Vernon 2008). 
Recently, the trial court extended the receivership until November 30, 2008. 
We granted the board members’ motion to consider that order as part of this
appeal.  See Tex. R. App. P. 29.6 (“While an appeal from
an interlocutory order is pending, on a party’s motion or on the appellate
court’s own initiative, the appellate court may
review .  . . a further appealable interlocutory order
concerning the same subject matter.”). 

Appellate Jurisdiction

          As an initial matter, Brazoria County contests our jurisdiction over the board members’ appeal of Brazoria County’s authority to bring a quo warranto proceeding, contending that we lack
jurisdiction to consider this argument in an interlocutory appeal.  The board
members argue that quo warranto proceedings are extraordinary in nature, and
are not available to challenge the legality or propriety of board member
conduct.  See Newsom v. State, 922 S.W.2d 274, 279 (Tex.
App.—Austin 1996, writ denied).    

Appellate courts have jurisdiction to
consider immediate appeals of interlocutory orders only if a statute expressly
provides appellate jurisdiction.  Stary v. DeBord, 967 S.W.2d 352,
352–53 (Tex. 1998).  The Texas Civil Practice and Remedies Code allows for an
appeal from an interlocutory order that appoints a receiver or grants a
temporary injunction.  Tex. Civ. Prac.
& Rem. Code Ann. § 51.014(a)(1), (4) (Vernon 2008) (listing
appealable interlocutory orders).  An order granting leave to file “an
information in the nature of a quo warranto” is not included in the statute
affording interlocutory appeals.  See id. § 51.014; Eichelberger v.
Hayton, 814 S.W.2d 179, 182 (Tex. App.—Houston [1st Dist.] 1991, writ
denied). In addition, the record on appeal contains no trial court proceeding
or order that could be framed as a plea to the jurisdiction.  Texas courts
strictly construe statutes authorizing interlocutory appeals.  Walker Sand,
Inc. v. Baytown Asphalt Materials, Ltd., 95 S.W.3d 511, 514 (Tex. App.—Houston [1st Dist.] 2002, no pet.).  An order “granting leave to file an information
in the nature of a quo warranto” is neither a final judgment, nor is it an
interlocutory order made appealable by statute.  Consequently, we lack
jurisdiction to review Brazoria County’s authority to bring the underlying
proceeding, except insofar as it implicates the appeal of the temporary
injunction and the appointment of a receiver.  

Temporary
Injunction

          The board members contend
that the trial court abused its discretion in ordering a temporary injunction
because Brazoria County did not plead and prove the elements required for a
temporary injunction.

The purpose of a temporary injunction
is to preserve the status quo pending trial, but it is an extraordinary remedy
and does not issue as a matter of right.  Butnaru v. Ford Motor Co.,
84 S.W.3d 198, 204 (Tex. 2002). Trial courts have broad discretion in deciding
whether to grant or deny a temporary injunction, and an appellate court should
reverse only if it finds a clear abuse of that discretion.  Tel. Equip.
Network, Inc. v. TA/Westchase Place, Ltd., 80 S.W.3d 601, 607 (Tex. App.—Houston [1st Dist.] 2002, no pet.).  We should not reverse a trial court’s
temporary injunction unless it is “so arbitrary as to exceed the bounds of
reasonable discretion.”  Id.  We review the evidence in a light most
favorable to the trial court’s order, but an erroneous application of the law
to undisputed facts constitutes an abuse of discretion.  Id.  

To obtain a temporary injunction, an
applicant must prove (1) a cause of action against a defendant, (2) a probable
right to the relief sought, and (3) a probable, imminent, and irreparable
injury in the interim.  Butnaru, 84 S.W.3d at 204.  An injury is irreparable
if there is no adequate remedy at law; if for example, a prevailing applicant
could not be compensated adequately in damages, or if damages cannot be
measured by any certain pecuniary standard.  Id.  While the board
members contend that none of these elements exists, the absence of any one
renders an award of temporary injunctive relief inappropriate.  See id. 
We find the third element dispositive.  

Brazoria County asserts that ACHE is an important part of its obligation to provide
healthcare assistance to its low-income residents.  It leases county-owned land
to ACHE to carry out that purpose.  In support of the trial court’s order, Brazoria County relies on evidence that ACHE might not qualify for the federal grant it had
been receiving since 2005.  ACHE, on the other hand, presented evidence that it
was taking steps to comply with federal regulations.  While the county’s
evidence suggests the possibility that this nonprofit corporation might lose
its federal funding, it did not suggest that the loss of federal funding would
jeopardize ACHE or its ability to serve low-income residents of Brazoria County.  To the contrary, the testimony at the hearing was that ACHE operates
through various sources of funding, and it operated without federal funding for
thirty-five years before it first received federal funds.  Brazoria County
implies that ACHE has an obligation to it to seek and receive federal funding,
but no evidence suggests that ACHE, a private, nonprofit corporation, either
requires or depends on federal funding to be able to provide healthcare
services to Brazoria County residents.  Nor has Brazoria County offered any
evidence of such an obligation to it, either in the lease agreements or
otherwise.  Consequently, Brazoria County fails to show that it would suffer an
imminent, irreparable injury, even if ACHE were to lose its federal funding. 
At most, Brazoria County has established a fear of the possibility of a future
injury, and such a contingency “is not sufficient to support issuance of a
temporary injunction.”  See Reach Group, L.L.C. v. Angelina Group,
173 S.W.3d 834, 838 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (citing EMSL
Analytical, Inc. v. Younker, 154 S.W.3d 693, 697 (Tex. App.—Houston [14th Dist.] 2004, no pet.)).  Because the evidence does not support the trial
court’s finding that irreparable harm to Brazoria County is probable or
imminent, Brazoria County has not satisfied the third element necessary to
obtain a temporary injunction.   

Appointment of Receiver

          The board members further
contend that the trial court abused its discretion in appointing a receiver
over all of the assets and business affairs of ACHE because the county did not
plead and prove the elements required for the appointment of a receiver.  

Whether authorized by statute or by
equity, we should affirm the interlocutory appointment of a receiver unless the
trial court clearly abused its discretion.  Mueller v. Beamalloy, Inc.,
994 S.W.2d 855, 858 (Tex. App.—Houston [1st Dist.] 1999, no pet); Abella v.
Knight Oil Tools, 945 S.W.2d 847, 849 (Tex. App.—Houston [1st Dist.] 1997,
no writ).  A trial court abuses its discretion when it acts without reference
to guiding rules and principles.  Downer v. Aquamarine Operators, Inc.,
701 S.W.2d 238, 241–42 (Tex. 1985).  If the decision was within the trial
court’s discretionary authority, we may not reverse simply because we might
have reached a different decision.  Beaumont Bank, N.A. v. Buller, 806
S.W.2d 223, 226 (Tex. 1991).  The appointment of a receiver, nevertheless, is a
harsh, drastic, and extraordinary remedy, to be used cautiously.  Hunt v.
Merch. Mart, Inc., 391 S.W.2d 141, 145 (Tex. Civ. App.—Dallas 1965, writ
ref’d n.r.e.); see Balias v. Balias, Inc., 748 S.W.2d 253, 257 (Tex.
App.—Houston [14th Dist.] 1988, writ denied).  Even if a specific statutory
provision authorizes a receivership, as in this case, a trial court should not
appoint a receiver if another remedy exists, either legal or equitable.  Rowe
v. Rowe, 887 S.W.2d 191, 200 (Tex. App.—Fort Worth 1994, writ denied)
(observing that statute permitting appointment of receiver over corporation
authorizes appointment only if party seeking relief convinces trial court that
all other legal and equitable remedies are inadequate).  Rather, receivership
is warranted only if the evidence shows a threat of serious injury to the
applicant.  Parness v. Parness, 560 S.W.2d 181, 182 (Tex. Civ.
App.—Dallas 1977, no writ); Hughes v. Marshall Nat’l Bank, 538 S.W.2d
820, 824 (Tex. Civ. App.—Tyler 1976, writ ref’d n.r.e.); Gunther v. Dorff,
296 S.W.2d 638, 640 (Tex. Civ. App.—Waco 1956, writ dism’d).  Our review
focuses on whether the pleadings and evidence are sufficient to justify a
receivership.  See Covington Knox, Inc. v. State, 577 S.W.2d 323,
325 (Tex. Civ. App.—Houston [14th Dist.] 1979, no pet.) (noting that when
appeal from order overruling motion to vacate receivership is perfected,
question becomes simply one of sufficiency of petition to support appointment
of receiver).

The Texas Nonprofit Corporation Act
governs the appointment of a receiver to rehabilitate a nonprofit corporation,
and it states in relevant part:

(A) A receiver may be appointed for the assets and
business of a corporation by the district court for the county in which the
registered office of the corporation is located, whenever circumstances exist
deemed by the court to require the appointment of a receiver to conserve the
assets and affairs of the corporation and to avoid damage to parties at
interest, but only if all other requirements of law are complied with and if
all other remedies available either at law or in equity, including the
appointment of a receiver for specific assets of the corporation, are determined
by the court to be inadequate, and only in the following instances:

(1)    In an action by a member when it is established:

(a) That the corporation is insolvent or in imminent
danger of insolvency; or

(b)  That the directors are deadlocked in the management
of the corporate affairs and the members are unable to break the deadlock, and
that irreparable injury to the corporation is being suffered or is threatened
by reason thereof; or

(c)  That the acts of the directors or those in
control of the corporation are illegal, oppressive, or fraudulent; or

(d)  That the corporate assets are being misapplied or wasted.

Tex. Rev. Civ.
Stat. Ann. art.
1396-7.05(A).  A court may appoint a receiver over an entire corporation only
if all other remedies are deemed inadequate.  See Aubin v. Territorial
Mortgage Co. of Am., Inc., 640 S.W.2d 737, 741–42 (Tex. App.—Houston [14th Dist.] 1982, no writ).  The burden of proof to show the existence of
circumstances justifying the appointment of a receiver rests on the party
seeking the appointment.  See Furgerson v. First Nat’l Bank, 218
S.W.2d 1019, 1020 (Tex. Civ. App.—Texarkana 1949, no writ).  To determine
whether the appointment of the receiver was authorized, therefore, we first
consider whether Brazoria County has met its burden to plead and prove that
other remedies available either in law or in equity are inadequate.  See
Aubin, 640 S.W.2d at 741–42.  

Nothing in the record indicates that Brazoria County met this burden or that the trial court considered remedies less drastic
than a receivership.  For example, if Brazoria County has a contractual
interest in ensuring that ACHE maintains its FQHC status, as it contends, it
has not shown that other remedies, such as money damages, cannot adequately
protect that contractual interest.  Because remedies at law were not even
considered, they could not have been deemed “inadequate” as required by the
Texas Nonprofit Corporation Act.   

Furthermore, no evidence suggests
that ACHE is insolvent or in imminent danger of insolvency to justify the
appointment of a receiver to take control of the entire corporation and all of
its assets; the county has merely shown that ACHE might lose one of its sources
of funding.  Brazoria County maintains that the public interest, as reflected
in the Texas Health and Safety Code, requires the county to provide healthcare
services to its low income residents, and that to meet this obligation, it leased
county-owned land to ACHE on which ACHE operates a clinic that provides such
services.  See Tex. Health & Safety Code Ann.
§ 61.028(a) (Vernon 2001) (listing healthcare services county must provide
for its indigent residents).  In 2005, the county extended its lease with ACHE
and noted that ACHE had become a FQHC, but nothing in the lease requires ACHE
to maintain its status as a FQHC.  The county also asserts that its own
obligation to provide healthcare to its indigent residents gives the county a
legal and contractual interest in ensuring that ACHE maintain its FQHC status. 
The county’s effort to transfer its own statutory obligation onto a private
corporation, however, fails to meet the statutory test for a
receivership—namely that without one, a danger of insolvency or injury to the
county or its residents exists.  Brazoria County’s obligation to provide
healthcare services to its residents does not require it to provide
federally-funded healthcare services, nor is ACHE—a private corporation—required
to maintain FQHC status to avoid a complete government takeover of its
operations.  Brazoria County fails to show how the county or its residents
would be irreparably injured were ACHE to lose FQHC status, or that the loss of
federal funding would place ACHE in danger of insolvency, or even that the loss
of federal funding is a foregone conclusion.  Accordingly, the county did not
justify the appointment of a receiver on this ground.          

Nor has Brazoria County demonstrated that the acts of the directors or those in control of the corporation are
illegal, oppressive, or fraudulent.  The county has shown only that, while one
of ACHE’s board members was on a brief sick leave, the board of directors had
eight rather than the required nine members.  This showing does not support Brazoria County’s contention that the board was therefore illegally constituted in
general.  Brazoria County relies heavily on Greater Fort Worth & Tarrant
County Community Action Agency v. Mims to justify the appointment of the
receiver, but Mims is distinguishable.  See 574 S.W.2d 870, 871 (Tex. Civ. App.—Fort Worth 1978, writ dism’d w.o.j.).  The trial court in Mims
appointed a receiver for the specific and limited purpose of ensuring that the
dysfunctional board was properly constituted to allow a proper vote on a
director’s employment status.  Id. at 871–72.  The Mims court did
not appoint a receiver to take full control over the entire corporation as the
trial court did in this case.  See id.  Mims upheld the
appointment of a receiver for the sole purpose of making a dysfunctional board
functional and properly constituted; it did not authorize a receivership over
all of a corporation’s assets and business affairs.  

Furthermore, Mims authorized
such a limited receivership to reconstitute a dysfunctional board only when the
board was “so impaired that it was no longer organized or functioning as it was
established or constituted,” and only when the court determines that a board is
“illegally constituted.” See Swain v. Wiley College, 74 S.W.3d
143, 148 (Tex. App.—Texarkana 2002, no pet.).  No evidence suggests that ACHE’s
board was so impaired and dysfunctional that it was illegally constituted.  On
the contrary, the record indicates that ACHE’s board was functional and that it
was taking steps to correct the deficiencies found by the HRSA.

Because the appointment of a receiver
over the assets and business affairs of a corporation is a “radical remedy,” it
should never be applied “unless some serious injury to the complainant will
result, or is threatened.”  See Tex. Consol. Oils v. Hartwell,
240 S.W.2d 324, 327 (Tex. Civ. App.—Dallas 1951, orig. proceeding).  Brazoria County has failed to demonstrate that a serious injury is threatened or will
result to the county or its residents, and thus we hold that the court abused
its discretion in appointing a receiver over all of ACHE’s assets and business
affairs.    

Admission
of Evidence

Last, the board members contend that
the trial court abused its discretion in admitting certain exhibits reflecting
correspondence from HRSA to ACHE, because the documents are not properly
authenticated, constitute hearsay, and are irrelevant.  The admission and
exclusion of evidence is committed to the trial court’s sound discretion, but a
trial court abuses that discretion when it acts without regard for any guiding
rules or principles.  City of Brownsville v. Alvarado, 897 S.W.2d 750,
753–54 (Tex. 1995). 

Texas Rule of Evidence 803(8)
excludes records from public offices and agencies from the hearsay rule.  Tex.
R. Evid. 803(8).  However, such records must be properly authenticated
to be admissible.  Tex. R. Evid. 901(a).  Generally, the
requirement of authentication or identification as a condition precedent to
admissibility is satisfied by evidence sufficient to support a finding that the
matter in question is what the proponent claims, and specifically, public records
or reports may be authenticated by evidence that the purported public record or
report is from the public office where items of this nature are kept.  Tex.
R. Evid. 901(a); 901(b)(7).  While Brazoria County contends that Rule
803(8) creates a presumption of admissibility, with the burden being placed on
the party opposing the admission of the report to show its untrustworthiness,
that presumption does not exempt the offered document from satisfying other
requirements of the rules.  See 1001 McKinney, Ltd. v. Credit Suisse
First Boston Mortgage Capital, 192 S.W.3d 20, 27–28 (Tex. App.—Houston [14th Dist.] 2005, pet. denied).  The rules of evidence do not require extrinsic
evidence of authenticity as a condition precedent to admissibility for certified
copies of public records because they are self-authenticating.  Tex.
R. Evid. 902(4).  The contested exhibits here, however, were not
authenticated by either certification or any extrinsic evidence.  The trial
court therefore erred in admitting these documents over objections to their
authenticity.           




Conclusion

          We conclude that we do not
have jurisdiction to consider the status of the pending quo warranto proceeding
in this interlocutory appeal, but because Brazoria County does not show the
necessary irreparable harm to support a temporary injunction or the appointment
of a receiver, we reverse the trial court’s orders granting a temporary
injunction and a receivership, and remand the cause to the trial court for
further proceedings.  We dismiss all pending motions as moot.  

 

 

                                                          Jane Bland

                                                          Justice

 

Panel consists of Justices Taft, Jennings, and Bland.