Opinion issued
October 7, 2010



In
The

Court of
Appeals

For
The

First District
of Texas

———————————

NO. 01-10-00593-CV

———————————

Klaus Genssler, U.S. Oil Recovery, L.P., MCC
REcycling, L.L.P., Genssler Environmental Holdings, L.L.C., and U.S. Oil RecoverY,
LLP,
Appellants

V.

Harris
County and the State of Texas, Appellees



 



 

On Appeal from the 125th
District Court

Harris County, Texas



Trial Court Case No. 2009-32636

 



 

 

O P
I N I O N

 

          In
this interlocutory appeal, appellants, Klaus Genssler, U.S. Oil Recovery, L.P.,
MCC Recycling, L.L.P., Genssler Environmental Holdings, L.L.C., and U.S. Oil
Recovery, LLP, challenge the trial court’s order appointing a receiver.[1]  Harris County and the State, acting through
the Texas Commission on Environmental Quality, brought suit against the
appellants for environmental violations on the real property located at 200 and
400 North Richey, Pasadena, in Harris County. 
After evidentiary hearings, the trial court issued a temporary
injunction against appellants requiring appellants to take measures to begin
removing hazardous material and prevent further hazardous materials,
wastewater, or sewage from discharging from the property.  Asserting that appellants had failed to take
any remedial measures and that the property posed an immediate risk of harm to
the public, Harris County sought and received the appointment of a receiver who
was charged with remediating the hazardous conditions on the property.  The receiver was authorized to seize and sell
assets belonging to the appellants to pay for the cost of remediation and of
the receivership.  We affirm in part and
reverse and remand in part.

Background

          U.S.
Oil Recovery L.P. (“U.S. Oil”) operates a wastewater facility at 400 North
Richey, in Pasadena, Texas.  MCC
Recycling, LLP, operates a wastewater facility at 200 North Richey.  Genssler Environmental Holdings,
L.L.C., and U.S. Oil Recovery, LLP are related entities that own the
real and personal property used by the wastewater facilities.  We refer to these entities collectively as
“the U.S. Oil Recovery parties.” 
Genssler is in charge of some or all of these entities.

          Because
facilities of this type can create significant environmental hazards, the
operation of the facilities must be conducted in compliance with state and
federal environmental laws.   Harris
County filed this suit alleging that wastewater from the 200 North Richey
facility had been discharged into Vince Bayou in violation of Texas Water Code
section 26.121(a).  On June 8, 2009, the
trial court signed a temporary injunction prohibiting unauthorized discharges
from the sites at 200 North Richey and 400 North Richey and requiring the
removal and disposal of hazardous waste from those sites.  Because of continuing violations at the
facilities through the course of this suit, Harris County amended its petition
nine times and sought further injunctive relief. 

          The trial
court conducted a temporary injunction hearing on March 8, 2010. Gary Fogerty
of the Texas Commission on Environmental Quality testified concerning evidence
of releases of wastewater that he had observed at the 200 North Richey location
in May, June, and August 2009, as well as January 2010.  He further testified that U.S. Oil Recovery
did not obtain required storm water discharge permits and did not have required
concrete barriers to keep wastewater from running off-site.

          Mike Scanlon,
president of Norex Engineering, testified that he was asked to evaluate the
condition of the plant at 200 North Richey and also to look at 400 North Richey.  He saw fluid running down the side of some
equipment. The fluid appeared as if it had flowed over the secondary
containment onto the ground at the 400 North Richey facility.  Scanlon stated that the facility had leaks
and did not meet the secondary containment requirements imposed by federal
regulations to operate as an oil recycling facility.  He further testified that wastewater was
leaking from the facilities and that such facilities are a danger to the health
and safety of Harris County citizens.

          Jennifer
Wheeler, the compliance services manager for Harris County Public Health and
Environmental Services, testified that the U.S. Oil Recovery parties had been
cited for approximately sixty violations since the granting of the June 8, 2009
temporary injunction.  Thirteen of the
violations were for illegal wastewater discharges.  Thirty-four were for hazardous and solid waste
violations, while nine were for nuisances. 
She further testified that a half million gallons of wastewater from the
facilities had entered the bayou.

          Robert Alan,
manager of the Permits and Technical Services Section of the Environmental
Public Health Division of Harris County Public Health and Environmental
Services, testified that there was no authorization to store hazardous waste at
the 400 North Richey facility.  However,
hazardous waste—benzene—was stored in 205 roll-off boxes for longer than 90
days.  The estimated cost to remove the
waste in the roll-off boxes was between 1 and 1.6 million dollars.

          On March 11,
2010, the trial court granted a second temporary injunction.  The court found that Harris County is likely
to prevail at the trial on the merits of its various claims, including its
claim that Genssler is the person in charge of the subject operations and has
caused, suffered, allowed, or permitted violations of the law that have
resulted in the conditions at 200 North Richey and 400 North Richey, Pasadena,
Texas.  The court ordered Genssler and
the U.S. Oil Recovery parties to remove and dispose of the hazardous waste
within 60 days of the effective date of the order.  Genssler and the U.S. Oil Recovery parties did
not appeal the temporary injunction.

          At the
hearing on the application to appoint a receiver in this case the trial court
heard testimony from Norm Williamson, Jr., a fire prevention investigator and
inspector with the Fire Marshall’s Office. 
Williamson inspected the 400 North Richey facility on June 8, 2010.  He found hazardous material, electrical
hazards, and flammable liquids in the same area as oil waste products.  He also found leaking drums.  Williamson stated that the facilities
contained fire hazards that are dangerous and in need of immediate attention.  Williamson further stated that there is no
containment of chemicals inside the buildings at the facilities and the
chemicals can be washed into the bayou next to the site.

          The trial
court had previously heard testimony at the temporary injunction hearing on
March 8, 2010 from Adele Pollard, a former employee of U.S. Oil.  Pollard testified that vessels and equipment
were not being maintained at U.S. Oil and MCC Recycling.  Pollard said that he saw spillage from the
tanks at the 400 North Richey location. 
He stated that hazardous waste was stored in leaking drums at the 400
North Richey location and there was a danger of the equipment failing and
releasing wastewater into the bayou.  He
further testified that U.S. Oil emits air contaminants from a slurry dryer and
there were frequent discharges from spills or overflows at the 200 North Richey
location.  He said that Genssler could
barely make payroll and he did not believe that Genssler had the funds to fix
the things that needed to be fixed to “get the place in order.”  Similarly, Robert Brown, the controller at
U.S. Oil Recovery, said that U.S. Oil had had problems making payroll and had
laid off about 20 employees in the three months prior to the temporary
injunction hearing.  He said that he did
not know of any way that U.S. Oil could borrow any of the funds necessary to
get $1.6 million to remove the roll-off boxes. 
He further stated that U.S. Oil has no equity in the land or buildings.  Brown told the trial court that as of March
11, 2010, U.S. Oil Recovery L.P. was not an adequately capitalized business and
that Genssler controls the activities of all employees of U.S. Oil directly or indirectly.

          At the
conclusion of the hearing the trial court granted the application to appoint a
receiver, requiring a $100 bond from Harris County, the applicant, and a $100 bond
from the receiver.  The court stated
in the order that it took judicial notice of all testimony and
evidence at the receivership hearing and previous hearings in the case.  The order concerning “Defendants
Klaus Genssler, individually, and d/b/a U.S. Oil          Recovery, L.P., MCC Recycling, L.L.P., Genssler Environmental
Holdings, L.L.C., and U.S. Oil Recovery, LLP, a/k/a U.S. Oil Recovery,
L.L.P.,” reads as follows:

1.       [They] are violating environmental laws
and putting the health and safety of residents of Harris County at risk by
storing hazardous and flammable waste in conditions that have created an
imminent fire and flood hazard at their facilities at 200 and 400 North Richey
Road in Pasadena, Texas;

 

2.       [They] have violated this Court’s
temporary injunction order signed on March 11, 2010, by failing to remove the
hazardous and flammable waste and all industrial waste and wastewater from
their properties at 200 and 400 North Richey Road;

 

3.       [They] have failed to appear for two
depositions ordered by this Court and have refused to accept service to appear
in court upon court order to show cause in response to plaintiffs Motions for
Contempt;

 

. . . 

 

8.       [S]ince the receivership was filed, [they]
have caused or have allowed or permitted others to remove valuable industrial
equipment from their possession from 200 North Richey Road and 400 North Richey
Road in Pasadena, Texas to places unknown;

 

          In its order,
the trial court also makes specific findings concerning Genssler, individually,
as follows:

4.       [His] current whereabouts are unknown
and he effectively has abandoned the facilities at 200 and 400 North Richey
Road in Pasadena, Texas;

 

5.       [He]  has indicated in his reports to Harris County
and the State of Texas that he and his companies have no money to clean up the
properties pursuant to the terms of the Temporary Injunction, but is not in
bankruptcy;

 

6.       [He] has previously been found to be
causing, suffering, allowing or permitting pollution to take place at 200 and
400 North Richey Road;

 

7.       [He] has taken approximately $10,000,000.00
per year from the defendant businesses for the past 3-4 years, and has not
reinvested this money into these companies. As a result, the physical plants at
defendants’  200 and 400 North Richey
Road facilities have fallen into disrepair to such a degree that they now pose
a serious threat to the safety of the residents and the environment in Harris
County, Texas;

 

          The trial
court also makes findings concerning the receiver.

9.       A receivership is necessary because there
is no other adequate remedy at law as defendants have failed to comply with two
temporary injunctions, and have failed to appear in court when ordered to do
so. In addition, there is an imminent threat to the residents of Harris County
because defendants’ facilities have limited fire protection and are illegally
storing hazardous and other industrial waste, as well as flammable waste, on
property that is partially in the floodplain and floodway;

 

10.     If
any portion of the Receiver’s compensation under this order exceeds the Defendants’
assets which are under receivership, Harris County agrees to compensate the
Receiver up to ten thousand dollars ($10,000) for these services under this
order. These funds are already authorized by Harris County Commissioners Court.
Any additional amount this Court determines Harris County is to pay the
Receiver is subject to approval by Commissioners Court.  The Receiver will be compensated at three
hundred fifty dollars ($350) per hour, subject to approval by Commissioners
Court.  Harris County is ordered to place
ten thousand dollars ($10,000) in the Court's registry as a deposit against the
Receiver’s fees.

 

          The
trial court also granted the receiver the following power, among others:

That the Receiver is authorized to use any means allowed
under the statute to bring the defendants’ facilities at 200 North Richey Road
and 400 North Richey Road in Pasadena, Texas permanently into compliance with
environmental laws,[2]
including: 

 

a)       seizing all assets in possession or
control of defendants, Klaus Genssler, individually, and d/b/a U.S. Oil
Recovery, LP., MCC Recycling, L.L.P., Genssler Environmental Holdings, L.L.C.,
and U.S. Oil Recovery,  LLP a/k/a U.S.
Oil Recovery, L.L.P., including any entities controlled or managed by Klaus
Genssler, or monies received for the benefit of Klaus Genssler; and, 

 

b)      using the assets obtained to pay the
Receiver’s fees, and to hire an environmental remediation company to [remediate
the property].

 

Law of Receivership and
Standard of Review

          We should
affirm a trial court’s interlocutory order appointing a receiver unless the
trial court clearly abused its discretion. 
Benefield v. State, 266 S.W.3d
25, 31 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (citing Mueller v.
Beamalloy, Inc., 994 S.W.2d
855, 858 (Tex. App.—Houston [1st Dist.] 1999, no pet); Abella v. Knight Oil
Tools, 945 S.W.2d 847, 849
(Tex. App.—Houston [1st Dist.] 1997, no writ)). 
A trial court abuses its discretion when it rules arbitrarily, unreasonably, without regard
to guiding legal principles, or without supporting evidence.  See Bocquet v. Herring, 972 S.W.2d 19, 21 (Tex. 1998); Pickens
v. Pickens, 62 S.W.3d 212,
214 (Tex. App.—Dallas 2001, pet. denied). 
Under the abuse
of discretion
standard, legal and factual sufficiency of the evidence are not independent grounds for
asserting error, but they are relevant factors in assessing whether the trial
court abused its discretion.  Pickens, 62 S.W.3d at 214.  The trial court does not abuse its discretion when its decision is based
on conflicting evidence
and some evidence in
the record reasonably supports the trial court’s decision.  Butnaru v. Ford Motor Co., 84 S.W.3d 198, 211 (Tex. 2002).

          “The
appointment of a receiver . . . is a harsh, drastic, and extraordinary remedy,
to be used cautiously.”  Benefield, 266 S.W.3d at 31 (citing Hunt
v. Merch. Mart, Inc., 391
S.W.2d 141, 145 (Tex. Civ. App.­—Dallas 1965, writ ref’d n.r.e.); Balias v.
Balias, Inc., 748 S.W.2d
253, 257 (Tex. App.—Houston [14th Dist.] 1988, writ denied)).  A trial court should not appoint a receiver
if another remedy exists, either legal or equitable.  Id.
(citing Rowe v. Rowe,
887 S.W.2d 191, 200 (Tex. App.—Fort Worth 1994, writ denied)).  Our review focuses on whether the pleadings
and evidence are sufficient to justify a receivership.  Id.
(citing Covington Knox, Inc. v. State, 577 S.W.2d 323, 325 (Tex. Civ. App.—Houston [14th Dist.] 1979,
no pet.)).  If the decision to appoint a
receiver was within the trial court’s discretion, we may not reverse simply
because we might have reached a different decision.  Id.
(citing Beaumont Bank, N.A. v. Buller, 806 S.W.2d 223, 226 (Tex. 1991)).  

Receivership against
Non-Parties

          In
his fifth issue, and several times within his other issues, Genssler contends
the trial court erred by appointing a receiver to seize assets of non-party
entities.  However, Genssler has provided
no evidence to establish his standing to assert the rights of a non-party.  See Birnbaum v. Alliance of American Insurers,
994 S.W.2d 766, 779 (Tex. App.—Austin, 1999), abrogated on other grounds by In re Bass, 113 S.W.3d 735 (Tex.
2003).  We hold that Genssler lacks
standing to appeal an order concerning non-parties.  See Goffney v. Houston Indep. Sch. Dist., No. 01-08-00063-CV, 2009 WL
2343250, *3–4 (Tex. App.—Houston [1st Dist.] July 30, 2009, no pet.) (mem. op.)
(holding that appellant lacked standing on appeal to challenge alleged
procedural due process violations against third party).

          We overrule Genssler’s fifth issue.




 

Receiver over Genssler’s Personal Estate

          In his third
issue, Genssler contends that the trial court erred by appointing a receiver
over his personal assets when there has been no showing that he owns any of the
real or personal property at 200 or 400 North Richey.

          In its
petition, the only theory of liability that Harris County alleged against
Genssler, individually, is that the U.S. Oil parties are his “alter ego.”  Generally, a business entity exists as a
separate legal entity, insulating the individuals who own ownership interests
from personal liability.  Country Village Homes, Inc. v. Patterson,
236 S.W.3d 413, 428 (Tex. App.—Houston [1st Dist.] 2007, pet. granted, judgm’t
vacated w.r.m.).  The alter ego theory
allows the individual to be liable for the business entity when there is such a
unity between the business entity and the individual that the business entity
has ceased to be a separate entity, and allowing the individual to avoid
liability through the use of the business entity would work an injustice.  See id.  Evidence relevant to prove an alter ego
theory includes: (1) payment of alleged business debts with personal funds or
other commingling of funds, (2) representations that the individual will
financially back the business entity, (3) diversion of profits for the
individual’s personal use, (4) inadequate capitalization, and (5) other
failures to keep business and personal assets separate.  Id.  A showing that an individual is an officer,
director, or majority owner of the ownership interest is insufficient to
support a finding of alter ego.  Id. 


          Here, the
trial court found that Genssler “has taken” $10,000,000 per year from the U.S.
Oil Recovery parties.  The only evidence
that Harris County identifies in support of the alter ego theory is the
testimony of a former employee of U.S. Oil and the testimony of a current
employee.  Adele Pollard, the former
employee, testified that Genssler is the president of U.S. Oil, “the man in charge”
of U.S. Oil, and “makes all the decisions” at U.S. Oil.  Robert Brown, the Controller for U.S. Oil
testified that Genssler controls U.S. Oil and directly or indirectly controls
the activities of U.S. Oil employees. 
Brown further testified that U.S. Oil was not adequately capitalized as of
the March 8, 2010 temporary injunction hearing. 

          No evidence
shows, however, that the U.S. Oil Recovery parties’ profits were diverted for
Genssler’s individual use or that there was a failure to keep Genssler’s assets
separate from the U.S. Oil Recovery parties assets.  No evidence shows that Genssler owns any
interest in any of the U.S. Oil Recovery parties.  There is no evidence in the record of Genssler
personally paying debts owed by the U.S. Oil Recovery parties.  Furthermore, Genssler’s status as an officer
or director is insufficient, standing alone, to support an alter ego
theory.  See id.  Because there is no
evidence that Genssler owns an interest in any of the U.S. Oil Recovery parties
or that the U.S. Oil Recovery parties are his alter ego, we hold that the trial
court abused its discretion by appointing a receiver over property owned by
Genssler individually.

          We sustain
Genssler’s third issue.  Because we
sustain this issue, we need not address Genssler’s other issues.  

Bond

          In
their first issue, the U.S. Oil Recovery parties assert the trial court erred
by appointing a receiver because the requirements of Texas Rule of Civil
Procedure 695a have not been met. 
Specifically, they contend that the trial court’s setting the bond in
the amount of $100 is insufficient to cover their likely damages in the event
they prevail at trial.

          Rule
695a provides, in pertinent part, 

No receiver shall be appointed with authority to take
charge of property until the party applying therefor has filed with the clerk
of the court a good and sufficient bond, to be approved by such clerk, payable
to the defendant in the amount fixed by the court, conditioned for the payment
of all damages and cost in such suit, in case it should be decided that such
receiver was wrongfully appointed to take charge of such property.  The amount of such bond shall be fixed at a
sum sufficient to cover all such probable damages and costs.

  

Tex. R. Civ. P.
695a.  Courts have held that the
applicant’s failure to file a bond in compliance with rule 695a requires
reversal of the order appointing a receiver.   
Rubin v. Gilmore, 561 S.W.2d
231, 234 (Tex. Civ. App.—Houston [1st Dist.] 
1977, no writ); O’Connor v.
O’Connor, 320 S.W.2d 384, 391 (Tex. Civ. App.—Dallas 1959, writ dism’d).  As this Court stated,  

The trial court was not, however, authorized to appoint a
receiver in the absence of an applicant’s bond filed in compliance with Rule
695a, Tex. R. Civ. P.  Neither the filing
of the receiver’s bond nor the filing of the temporary injunction bond satisfied
this requirement.  The requirement of an
applicant’s bond is mandatory, and non-compliance with Rule 695a requires the
reversal of the order appointing the receiver. 

 

Rubin,
561 S.W.2d at 234 (citations omitted).

          Generally,
the amount of a bond rests in the trial court’s discretion.  See
Childre v. Great Southwest Life Ins. Co., 700 S.W.2d 284, 289 (Tex. App.—Dallas
1985, no writ) (bond for receiver); see
also Maples v Muscletech, Inc., 74 S.W.3d 429, 431 (Tex.
App.—Amarillo 2002, no pet.) (bond for temporary injunction).[3]  Here, the U.S. Oil Recovery parties contend
the amount of the bond is insufficient. 
They employ the following reasoning. 
First, the receiver has been appointed to remediate the property at
issue.  The receiver has been empowered
to sell assets of the U.S. Oil Recovery parties to raise funds to pay for
remediation.  Harris County “stated in
open court that even $90,000 would not be enough to get started.”  The U.S. Oil Recovery parties conclude that
their minimum damages will be $90,000. 
Therefore, they contend a bond for $100 is “clearly insufficient” and
the trial court’s order must be reversed.   


          We
disagree with this reasoning for two reasons. 
First, if the receiver sells assets and then applies the proceeds to
remediate the property, the U.S. Oil Recovery parties have not been truly
damaged.  Rather, the U.S. Oil Recovery
parties will be in the position they should be now—assets will have been sold
and money spent, but in return the appellants will receive property that complies
with the trial court’s unappelaed injunction order.  The U.S. Oil Recovery parties do not explain
how a receiver to bring the property in conformity with the applicable laws and
with the trial court’s unappealed injunction causes them any harm. Second, other
than the statement by Harris County that “$90,000 would not be enough to get
started,” the U.S. Oil Recovery parties identify no evidence showing what their
damages would be in the event the receiver was wrongfully appointed.  Without some evidence in the record that
supports a higher bond amount, we cannot conclude that the trial court abused
its discretion.  See IAC, Ltd. v. Bell Helicopter Textron, Inc., 160 S.W.3d 191, 203
(Tex. App.—Fort Worth 2005, no pet.) (holding trial court did not abuse its
discretion in setting temporary injunction bond at $350,000 when appellant
presented no evidence its damages would exceed that amount); Speedman Oil Co. v. Duval County Ranch Co.,
504 S.W.2d 923, 931 (Tex. Civ. App.—San Antonio 1973, writ ref’d n.r.e.) (“Defendants’
argument that the amount of the bond is insufficient is not unpersuasive.  However, the record furnishes no reliable
information which would guide us in setting the proper amount.”); see also Connell Chevrolet, Inc. v. Carter,
No. 01-94-00595-CV, 1994 WL 525902, at *6 (Tex. App.—Houston [1st Dist.] Sept.
29, 1994, no writ) (not designated for publication) (holding trial court did
not abuse its discretion in setting temporary injunction bond at $1000 when
appellant asserted amount was “patently an abuse of discretion” but failed to
introduce any evidence to show possible damages from injunction); Taylor v. Parker, No. 01-87-00393, 1988
WL 10770, at *4 (Tex. App.—Houston [1st Dist.] Feb. 11, 1988, no writ) (not
designated for publication) (stating, in appeal from interlocutory order
appointing receiver, “appellant bore the burden of showing that the
circumstances dictated a more substantial bond”).   

          We overrule the U.S. Oil Recovery parties’ first issue.




 

Mueller Case

          The
U.S. Oil Recovery parties contend that the trial court’s order is an
impermissible order granting a “liquidating receivership,” citing this Court’s
opinion in Mueller v. Beamalloy, Inc.,
994 S.W.2d 855 (Tex. App.—Houston [1st Dist.] 1999, no pet.).   

          In Mueller, this Court held that section
64.001(a)(6) of the Texas Civil Practice and Remedies Code does not authorize
the appointment of a liquidating receiver over a corporation.  In Mueller, this Court addressed the authority of the trial court’s
appointing a receiver authorized to carry out “the liquidation of the assets
and business of the corporation.”  Id. at 859 (quoting former Tex. Bus. Corp. Act. Ann. art. 7.06A); compare Tex. Bus. Orgs. Code § 11.405 (Vernon 2010) (current
version of statute, stating court may appoint a receiver charged with
“liquidation of the property and business of the domestic entity”). Here, the
receiver has not been charged with liquidation of the property and business of
the U.S. Oil Recovery parties.  Rather,
the receiver is charged with remediating the property and has been authorized
to sell assets as necessary to fund the remediation efforts.  This is not a “liquidating receiver” as
discussed in Mueller.  We hold that Mueller does not apply to this case.  

          We overrule the U.S. Oil Recovery parties’ second issue.


Conclusion

          We
affirm that portion of the trial court’s order appointing a receiver over U.S.
Oil Recovery, L.P., MCC Recycling, L.L.P., Genssler Environmental Holdings,
L.L.C., and U.S. Oil Recovery, LLP for the purposes of remediating the
properties at 200 and 400 North Richey in Pasadena.  We reverse that portion of the
trial court’s order appointing a receiver over the assets and estate of Klaus
Genssler, individually, and remand this cause for the trial court to modify the
order appointing a receiver by removing references to Klaus Genssler,
individually, in accordance with this opinion.

 

                                                

                                                                   Elsa
Alcala

                                                                   Justice

 

Panel consists of Chief
Justice Radack and Justices Jennings and Alcala.

 

 

 











[1]           See
Tex.
Civ. Prac. & Rem. Code Ann.
§ 51.014(a)(1) (Vernon 2008) (authorizing appeal of interlocutory order
appointing receiver).





[2]           At oral argument, the panel discussed
the phrase “permanent compliance” contained in the order appointing a receiver
with the parties.  Harris County
explained that, as used in the order, the phrase means “complete compliance.”  The U.S. Oil Recovery parties have not challenged
the use of that phrase on appeal; we, therefore, do not address it.





[3]           As
the Dallas court of appeals noted in a case dealing with the sufficiency of a
temporary injunction bond, “Surprisingly, there is little authority to guide us
. . . .”  Currie v.
Int’l Telecharge, Inc., 722 S.W.2d 471, 475 (Tex. App.—Dallas 1986, no
writ).  The cases cited by the U.S. Oil
Recovery parties all concern the absence of an applicant’s bond, not the
insufficiency of the amount of the bond. 
See, e.g., Rubin
v. Gilmore, 561 S.W.2d 231,
234 (Tex. Civ. App.—Houston [1st Dist.] 
1977, no writ).  We, therefore,
look to cases involving bonds for a temporary injunction or for a receiver
because the bonds in each of those circumstances serve a similar purpose to the
bond required of an applicant for a receivership.  Compare
Tex. R. Civ. P. 695a (applicant’s bond must be conditioned on payment of “all damages and
cost in such suit, in case it should be decided that such receiver was
wrongfully appointed to take charge of such property” with Tex. R.
Civ. P. 684 (injunction bond must be conditioned on
payment  of “all sums of money and costs that may be
adjudged against him if the restraining order or temporary injunction shall be
dissolved in whole or in part”); see also
Fite v. Emtel, Inc., No. 01-07-00273-CV, 2008 WL 4427676, at *9 (Tex.
App.—Houston [1st Dist.] Oct 2, 2008, pet denied) (stating purpose of
applicant’s and receiver’s bonds “is to ensure that the defendant can be
reimbursed for any damages caused by the appointment of the receiver in the event that the receiver was
wrongfully appointed”).